[Civ. No. 44837. First Dist., Div. Four. Mar. 23, 1979.]

DAVID LUTHER GHENT, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Terry A. Green for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Eugene W. Kaster, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**RATTIGAN, J.**—The principal question in this proceeding is whether allegations of "special circumstances" made in an accusatory pleading charging murder, and portending punishment by death as provided in section 190 and related sections of the Penal Code,[1] may be challenged on a motion addressed to the pleading pursuant to section 995. The proceeding has reached this court (Division Four) during an unusual sequence in which another division issued an alternative writ in compliance with an order of the Supreme Court. The ensuing review has been additionally complicated by a procedural bar raised for the first time in the People's return to the alternative writ. The full sequence calls for a chronological summary of the pertinent proceedings.

### *Procedural Sequence*

Petitioner David Luther Ghent was initially charged by complaint with having committed a murder and several other felonies. A preliminary examination was conducted before a magistrate on two days in March, 1978.[2] At its conclusion on March 10, petitioner was held to answer on all charges. A seven-count information was accordingly filed in respondent court on March 21.

Petitioner was charged in count one with having murdered Patricia Bert, on February 21, in violation of section 187. It was "further alleged" in count one "that the defendant was personally present during the commission of the act and acts causing death, and with intent to cause death physically aided and committed such act and acts causing the death of the victim, . . . and that the murder was willful, deliberate, and premeditated and was committed during the commission and attempted commission of rape by force and violence" in violation of section 261, subdivision 2.[3]

---

[1] All statutory references are to the Penal Code.

[2] All dates mentioned refer to the calendar year 1978 unless otherwise indicated.

[3] The People thus alleged "special circumstances," for purposes of imposing the death penalty for the murder, by incorporating the following language of section 190.2: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found, in a proceeding under Section 190.4, to be true: . . . [¶] (c) The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts causing death and any of the following additional circumstances exists: . . . [¶] (3) The murder was willful, deliberate,

The rape mentioned in count one was itself charged in count two, which accused petitioner of having raped Patricia Bert on February 21 in violation of section 261, subdivision 2. He was charged in count three with having assaulted Jacqueline Preskitt with intent to commit rape, also on February 21, in violation of section 220. Count four charged him with having committed a crime against the person of a third victim in 1977. In counts five, six, and seven, he was respectively charged with having committed three crimes against the person of a fourth victim on May 27, 1975.

Petitioner was arraigned on the information when it was filed on March 21. On his section 995 motion, which he made by filing written notice of it on May 25,[4] he expressly cited the statute;[5] sought to have the allegations of special circumstances stricken from count one upon the ground that they were unsupported by the evidence received at the preliminary examination; and sought dismissal of counts two and four on the same ground. Also on May 25, he moved for an order severing the various counts for separate trials on the charge or charges relating to each of the four victims named in the information.

In a memorandum decision filed on August 7, respondent court in effect made separate orders in which it (1) denied the section 995 motion insofar as it sought to have the allegations of special circumstances stricken from count one, (2) denied it insofar as it sought dismissal of count two, (3) granted it by ordering the dismissal of count four, (4) granted the severance motion by ordering the three counts charging the 1975 offenses (five, six and seven) severed for trial, and (5) denied it as to the other three counts not dismissed (one, two, and three).

On August 15, petitioner filed in this court an omnibus "Petition For Writs of Prohibition And Mandate" in which he sought the indicated relief from the orders described above as Nos. 1, 2, and 5. The petition was regularly assigned to Division Two, which denied it on August 18.

and premeditated and was committed during the commission or attempted commission of any of the following crimes: . . . [¶] (iii) Rape by force or violence in violation of subdivision (2) of Section 261 . . . ."

[4] The section 995 motion was thus made 65 days after petitioner had been arraigned on March 21.

[5] Section 995 provides in pertinent part: "The indictment or information must be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases: . . . [¶] If it be an information: . . . [¶] 2. That the defendant had been committed without reasonable or probable cause."

The order of denial was made without opinion and without opposition having been received or requested from the People.

Petitioner filed a petition for hearing in the Supreme Court, where the Attorney General again did not appear in opposition. The Supreme Court made an order granting the petition and returning the matter to Division Two with directions to issue an alternative writ of prohibition and to calendar the matter. Division Two issued the writ as ordered. The cause was subsequently retransferred to this court (Division Four) because of the prior pendency here of a proceeding which involved at least one identical issue. (*Page* v. *Superior Court* decided, *post,* at p. 959 et seq. [153 Cal.Rptr. 730].)

### The Section 1510 Question

The Attorney General appeared in this court by filing a return to the alternative writ in which he contested the petition on its merits. ▆ At the outset, however, he contended that section 1510 bars pretrial appellate relief from the orders denying petitioner's section 995 motion (described as Nos. 1 and 2 above) because the motion itself was made more than 60 days after petitioner was arraigned.[6] (See fn. 4.) The contention thus emerges at the last possible stage of the proceeding, but this has occurred because the Attorney General was not asked to contest the petition earlier and he did not elect to do so. We therefore consider it first.

Section 1510 does not prevent a defendant in a felony prosecution from making a section 995 motion at any time before trial; it operates only to preclude pretrial appellate relief from an order denying one which (1) was made more than 60 days after his arraignment and (2) does not fall within either of the exceptions for which section 1510 expressly provides. (See fn. 6, *ante.*) The 60-day bar may therefore not be asserted in the trial court when he makes the motion, and it must be raised in the appellate court when he challenges an order of denial by filing a petition for extraordinary relief pursuant to section 999a.[7] ▆ Once it is raised and

---

[6]Section 1510 provides: "The denial of a motion made pursuant to Section 995 or 1538.5 may be reviewed prior to trial *only if* the motion was made by the defendant in the trial court not later than 45 days following defendant's arraignment on the complaint if a misdemeanor, or 60 days following defendant's arraignment on the information or indictment if a felony, unless within these time limits the defendant was unaware of the issue or had no opportunity to raise the issue." (Italics added.)

[7]Section 999a provides in pertinent part: "A petition for a writ of prohibition, predicated upon the ground that . . . the defendant had been committed on an information without reasonable or probable cause, must be filed in the appellate court

established in the appellate court, he bears the burden of showing that he is within one exception or the other. The stop-or-go question thus presented is whether the bar applies or one of the exceptions does, and the answer turns upon a determination of fact to be made by the appellate court.

■ When the Attorney General asserted the bar of section 1510 in his return to the alternative writ (at long last, as we have seen), he cited the undisputed fact that petitioner's section 995 motion had been made on the 65th day after his arraignment. (See fn. 4, *ante*.) It was thereby established, prima facie, that the motion had been made three days too late to permit appellate relief from any order or orders subsequently denying it.[8] We requested that petitioner respond. He filed a reply memorandum in which his attorney claimed the benefit of the second section 1510 exception by alleging that he had had "no opportunity" to prepare the section 995 motion within the 60-day period for several reasons, principally the "length" of the reporter's transcript of his preliminary examination.

Counsel elaborated by telling us at oral argument that the transcript had not actually been prepared and made available to petitioner until a substantial period of time had elapsed after his arraignment. The Attorney General did not contest the fact represented, nor did he object to the competence of counsel's oral statement as evidence of it. We consequently accept it as true.

A defendant charged with homicide is entitled to a transcript of his preliminary examination by section 869, which contemplates that it will be prepared and made available to him within 10 days after the hearing. (See § 869, subds. Fifth and Sixth.) Delay in its availability may warrant

within 15 days after a motion made under Section 995 . . . on the ground that . . . the defendant had been committed on an information without reasonable or probable cause, has been denied by the trial court. . . ."

Section 999a is reached by section 1510 because it provides the "sole" procedure for obtaining pretrial appellate relief from any order denying a section 995 motion made at any time. (*Guerin* v. *Superior Court* (1969) 269 Cal.App.2d 80, 82 [75 Cal.Rptr. 923].) Section 1510 may therefore operate to bar the invocation of section 999a because of the lapse of a time limit which antedated the commencement of the 15-day limit provided in section 999a. The two limits differ in that section 999a permits no exceptions but section 1510 specifies two. (See fn. 6, *ante*.)

[8]The 60th day after petitioner's arraignment on March 21 was May 20, a Saturday, which meant that the last "day" of the 60-day period was Monday, May 22. (Code Civ. Proc., § 12a; *People* v. *Taylor* (1975) 46 Cal.App.3d 513, 535 [120 Cal.Rptr. 762].) The motion made on May 25 was consequently "late" by only three days.

delay in his ongoing prosecution in the superior court, but does not command it as a matter of law. The only protection against delay in preparation of the transcript appears in provisions of the statute which impose partial wage or salary sanctions on a court reporter responsible for it. (*Id.*, subds. Fifth and Seventh.) We do not perceive in section 1510 a legislative intent that such delay should be counted against the defendant in the computation of the 60-day period within which a section 995 motion must be made if its denial is to be reviewable by an appellate court pursuant to section 999a. (See fn. 7 and the accompanying text, *ante.*) Petitioner has therefore brought himself within the "no opportunity" exception provided in section 1510 to the extent that the period has been tolled, for purposes of this review, by the de minimis period of "delay" which actually attended his section 995 motion. (See fn. 8, *ante.*)

### *The Section 995 Question*

 The Attorney General raises the further procedural argument that petitioner's section 995 motion did not reach the allegations of special circumstances because the evidentiary review it commanded was limited by the language of the statute to the question whether he had been committed for an *offense* "without reasonable or probable cause" (see § 995 as quoted in fn. 5, *ante*) and the allegations speak only to "enhancement of penalty" for an *offense* but do not charge one. The Attorney General also points out that the Legislature did not enlarge the scope of this review to reach allegations of special circumstances, by amending section 995 or otherwise, when it adopted death penalty statutes in 1973 and again in 1977.[9]

The authority cited for the first argument is *People* v. *Superior Court (Grilli)* (1978) 84 Cal.App.3d 506 [148 Cal.Rptr. 740], in which the defendant-real party in interest had been accused of several crimes charged in separate counts of an information. None of the crimes involved a homicide, but the information "contained clauses alleging

---

[9]These references are to the 1973 and 1977 phases of the chronology in which the former death penalty law of this state was held unconstitutional in a 1972 decision of the Supreme Court (*People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880]): the decision was effectively overruled when the voters adopted a constitutional amendment in the same year (Cal. Const., art. I, § 27, added Nov. 7, 1972); the Legislature enacted a new law in 1973 (Stats. 1973, ch. 719, p. 1297); the 1973 enactment was held unconstitutional in 1976 (*Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650. 556 P.2d 1101]): and the Legislature enacted a new law. over the Governor's veto, in 1977. (Stats. 1977, ch. 316, p. 1255. See, generally, 5 Pacific L.J. 321 et seq. (1974): 9 Pacific L.J. 439 et seq. (1978).) The agonizing public and legislative debates which attended all stages of this sequence are matters of current history and common knowledge.

great bodily injury with respect to each count, in accordance with the provisions of section 12022.7." (*Id.*, at p. 509.) The superior court made an order granting a section 995 motion "to dismiss" these allegations, and the People petitioned for a writ of mandate. (*Ibid.*) The Court of Appeal ordered the writ issued (*id.*, at p. 514), stating in pertinent part:

"The People contend that the fact of great bodily injury charged in an accusatory pleading pursuant to section 12022.7 may not be the subject of a motion to dismiss made pursuant to section 995. We agree. Although section 12022.7 has been the subject of but limited judicial interpretation [citation] it is clear from judicial analysis of analogous enhancement statutes (§§ 12022, 12022.5) that its provisions *do not define a crime or offense* but relate to the *penalty* to be imposed under certain circumstances. [Citations.] . . . We hold that since section 12022.7 does not define a *separate offense*, but merely imposes *additional punishment* for the felony or attempted felony committed, an allegation made pursuant to section 12022.7 may not be the subject of a challenge on the ground that the defendant had been committed without reasonable or probable cause." (*People* v. *Superior Court (Grilli), supra,* 84 Cal.App.3d 506 at pp. 512-513 [original italics].)

Section 12022.7, and the "analogous enhancement statutes" enable accusatory allegations which may produce "additional punishment" in the literal sense that if found to be true they will warrant the "addition" of specified years to a term of imprisonment imposed as punishment for the underlying offense. They are pure "enhancement" allegations because they may produce the "enhancement" of one term of punishment by another. Allegations of special circumstances may produce the penalty of death, which cannot realistically be equated with "additional punishment" because it is *total* punishment. (See *Woodson* v. *North Carolina* (1976) 428 U.S. 280, 305 [49 L.Ed.2d 944, 961-962, 96 S.Ct. 2978].) They are thus distinguishable from "enhancement" allegations on the stark basis that death is distinguishable from life. A further distinction appears in the gross disparity between the consequences of "enhancement" allegations, on the one hand, and allegations of special circumstances on the other.[10]

These distinctions invalidate both *Grilli* and the decisions cited in it (see *People* v. *Superior Court (Grilli), supra,* 84 Cal.App.3d 506 at

---

[10]The disparity may be illustrated by this two-way analysis:

An "enhancement" allegation provides the prosecution with leverage for plea-bargaining purposes, but it remains a negotiable point among others. It does not affect eligibility for bail "as a matter of right." (See §§ 1271, 1272.) It may require that a few extra steps be taken when a plea is entered (§ 1025), at trial (§§ 1158, 1158a), and at sentencing. (§ 1170.1.) It may nevertheless be routinely proved at trial, either separately

pp. 512-513) as authority for the Attorney General's argument that allegations of special circumstances may not be challenged on a section 995 motion. The distinctions also demonstrate that the People, as well as the accused, have an overriding interest in the assurance that these allegations are founded on perceptible evidence showing reasonable cause to make them and to assume their portentous consequences in a prosecution for murder. (See fn. 10, *ante.*) ██ ██ That assurance will be forthcoming only if the prosecuting authorities produce the requisite evidence at the preaccusatory inquiry on the murder charge *and* if its sufficiency to support the allegations may be tested in a pretrial procedure which includes appellate review.

Such procedure exists only under sections 995 and 999a, because they alone provide a pretrial mechanism with which preaccusatory evidence may be tested for reasonable cause. (See fns. 5 and 7, *ante.*) The fact that the Legislature did not create another pretrial mechanism for that purpose, with regard to allegations of special circumstances, means either that the members were oblivious to the public interest in the purpose or that they deemed it served by sections 995 and 999a. The first interpretation is precluded because of the agonized attention the Legislature has given to the death penalty law on two occasions in recent years. (See fn. 9.) We accordingly conclude, as a matter of legislative intent, that the sufficiency of the evidence underlying allegations of special circumstances may be challenged on a pretrial motion made pursuant to section 995. It

(see, e.g., §§ 667.5, 969, 969a, 969b [prior felony conviction]) or with evidence of the underlying crime itself. (See, e.g., §§ 969c, 969d, 12022, 12022.5, 12023 ["armed" and "use" allegations involving firearms or other weapons]; § 12022.6 [value of property taken or damaged]; § 12022.7 [infliction of great bodily injury].) No such allegation requires a separate trial, nor does it affect the appellate process as such.

In contrast, allegations of special circumstances will affect and pervade every stage of a prosecution for murder. Their portent of punishment by death lies overwhelmingly in the prosecution's favor for plea-bargaining purposes. They affect eligibility for admission to bail "as a matter of right." (See §§ 1270, 1271, 1272.) They also require additional procedural steps at arraignment (§ 987), and when a plea is entered (§ 1018), but they may—and commonly do—command such further steps as the selective appointment of more experienced defense counsel, court-imposed gag orders and other restrictions on publicity, courtroom security precautions, a larger jury venire and more comprehensive juror voir dire because of the death penalty issue alone, sequestration of the jury, and more rigorous application of the rules of evidence. Jury disagreement on the truth or untruth of allegations of special circumstances may result in at least one more trial of that issue before a new jury. (§ 190.4, subd. (a).) A verdict or finding of their truth in any case requires the equivalent of a separate trial, on penalty, at which the evidence will reach far beyond proof of the murder charged. (See § 190.3.) Under some circumstances, the penalty issue must be tried by a jury even if the issue of guilt was not. (§ 190.4, subd. (b).) A verdict fixing the penalty at death requires automatic review of the evidence by the trial court. (§ 190.4, subd. (e).) The terminal "judgment of death" produces an automatic appeal to the Supreme Court alone (Cal. Const., art. VI, § 11; § 1239, subd. (b)), and requires priority disposition by that court. (§ 190.6.)

follows that denial of the motion is reviewable by an appellate court pursuant to section 999a.

## The Merits of the Proceeding

### (1) The Orders Denying the Section 995 Motion

The questions on the merits are whether the evidence received by the magistrate is sufficient to support the allegations of special circumstances made in count one and petitioner's commitment for the rape charged in count two.

■ The evidence will suffice for the latter purpose if it shows "reasonable or probable cause" for the commitment. It will do this, without regard to whether it might support petitioner's conviction on count two, if it provides "some rational ground for assuming the possibility" that the rape was committed and that he may be guilty of it. ■ ■ A reviewing court may not substitute its judgment for that of the magistrate as to the weight of the evidence, and every legitimate inference to be drawn from it must be drawn in favor of the information. (*Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464-465 [93 Cal.Rptr. 587, 482 P.2d 211]; *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; *People* v. *Wyrick* (1978) 77 Cal.App.3d 903, 908 [144 Cal.Rptr. 38].)

■ We have seen that petitioner's section 995 motion raised the additional question whether the evidence received by the magistrate showed "reasonable cause" for the allegations of special circumstances made in count one. Our review of the order denying the motion in that respect (described above as order No. 1) therefore requires application of the same standards to the evidence in quest of "reasonable cause" for those allegations. Because they are made in the successively conjunctive format of the statute enabling them (§ 190.2), they allege the "special circumstances" (*ibid.*) that (1) petitioner was "personally present" when the acts causing death were committed (§ 190.2, subd. (c)) and that (2) he intentionally and physically committed those acts (*ibid.*); and the "additional circumstances" (*ibid.*) that (3) the murder was "willful, deliberate, and premeditated" (§ 190.2, subd. (c)(3)) and that (4) it was "committed during the commission" of forcible rape. (§ 190.2, subd. (c)(3)(iii). See fn. 3, *ante.*) With these separate elements in mind, we summarize the pertinent evidence received by the magistrate as follows:

On February 21, the victim named in counts one and two was living with her husband in San Jose. The couple was acquainted with petitioner, who lived in San Jose with Jacqueline Preskitt (the assault victim named

in count three) and her family. Ms. Preskitt's husband was not at home on the night of February 20-21. Between 4 and 5 a.m. on February 21, she awoke and saw petitioner in her bedroom. He "pounced" and laid on top of her in her bed, stating that he "wanted" her body. She screamed and fought him, until he desisted when her young son came to the bedroom. Petitioner left the room after an argument. When she left it and returned shortly afterward, he pursued her to the bedroom and pushed the door open by force. He was carrying a pair of scissors on this occasion. He left the Preskitt home at about 5:30 a.m.

At about 6:30 on the same morning, a neighbor of the murder victim saw petitioner drive slowly past the victim's residence in a van, circle the block, and park at the residence. He left the van, entered the residence, came out in about 15 minutes, drove the van away, and parked it around a corner. The neighbor then saw him walking back in the direction of the residence. She saw him come out of it again at 7:45 a.m.

The murder victim's nude body was found in her home at 1:50 p.m. on February 21. Her arms had been tied with a length of cloth, and she had been stabbed. An autopsy surgeon determined that she had died "early that morning," and that her death had been caused by one or more of several deep stab wounds inflicted with a knife-like instrument. The surgeon noticed no particles of cloth in any of the wounds, which was consistent with the theory that the victim had been stabbed while nude.

It was established that she had had marital intercourse early on the morning of February 19. The autopsy surgeon found spermatozoa in her genital cavity, but no evidence of "trauma" in that area. He determined from a microscopic examination that the spermatozoa "could have been a couple of days old" or "less." A criminalist testified that he had examined a vaginal smear taken from the victim's body. Its "acid phosphatase level" indicated that she had had intercourse at "any time over a period of two days," a range which extended equally between (and included) "immediately prior" and "not more than two days prior" to her death.

The inference that the rape charged in count two was committed is supported by the expert testimony last quoted, and by the evidence that the victim's body was nude and tied when it was found on the early afternoon of February 21. The inference that petitioner was involved in the rape is supported by the eyewitness testimony placing him in the victim's home that morning and by the testimony of Jacqueline Preskitt to the effect that she had frustrated his sexual attacks just before that. These inferences are neither conclusive nor exclusive, but we must draw them because they are "in favor of the information." (*Caughlin* v.

*Superior Court, supra,* 4 Cal.3d 461 at pp. 464-465.) Their sum provides a "rational ground" for the assumptions that the rape was committed and that petitioner may be guilty of it. (See *id.,* at p. 464.) He is accordingly not entitled to relief from the order (No. 2) denying his section 995 motion to dismiss count two.

The same evidence inevitably supports the inferences that the murder was "committed during the commission" of the rape (§ 190.2, subd. (c)(3)(iii)) and that petitioner was "personally present" and intentionally committed the acts causing death. (*Id.,* subd. (c).) The facts inferred provide a "rational ground" (see *Caughlin* v. *Superior Court, supra,* 4 Cal.3d 461 at p. 464) for the allegations which recite them as special circumstances in count one.

Petitioner contends in effect that an inference that the murder was "willful, deliberate, and premeditated" may not be drawn because any evidence supporting that inference is limited to the rape and may not be transposed to the murder. This argument is based in part upon the conjunctive language in which the statute describes the pertinent "additional circumstances" (§ 190.2, subd. (c)) as the "willful, deliberate, and premeditated" nature of the murder "and" its commission "during the commission" (*id.,* subd. (c)(3)) of any of the felonies it enumerates. (*Id.,* subd. (c)(3)(i) et seq.)

The conjunctive language defines the several distinct "special circumstances" which must be proved to support the *imposition* of the death penalty. The question whether each of them must be independently and conjunctively proved for that purpose is not before us, and we do not reach it. The issue here is whether the preaccusatory evidence shows reasonable cause for the *allegations* of the various "special circumstances" made in the information. In answering this limited question, we do not interpret the conjunctive language of the statute as requiring that the preaccusatory evidence show reasonable cause for each allegation independently of the others. If a single aspect of that evidence shows reasonable cause for two or more of the allegations, it will thus support each.

Viewed accordingly, the totality of the preaccusatory evidence in this record supports the inference that the murder was "willful, deliberate, and premeditated," as those terms are defined (see *People* v. *Anderson* (1968) 70 Cal.2d 15, 26-27 [73 Cal.Rptr. 550, 447 P.2d 942]), either because it was planned with the rape or conceived thereafter for the purpose of concealing complicity in it. The inference provides a "rational ground" (see *Caughlin* v. *Superior Court, supra,* 4 Cal.3d 461 at p. 464) for

the special-circumstance allegation that the murder was "willful, deliberate, and premeditated."

The evidence received by the magistrate thus shows "reasonable cause" for all the allegations of special circumstances made in count one. Respondent court was accordingly correct in denying the section 995 motion as to those allegations. Petitioner is not entitled to relief from order No. 1.

### (2) *Review of the Order Denying a Severance*

We turn to the order (described above as No. 5) by which respondent court denied petitioner's motion for a severance of counts one and two from count three for trial. Section 954 provides in pertinent part that two or more charges against the same defendant may be tried together if they are "connected together in their commission," but that the court "in the interests of justice and for good cause shown, may *in its discretion* order that the different offenses . . . be tried separately." (Italics added.) Petitioner claims an abuse of discretion, in order No. 5, upon the ground that evidence of the crime charged in count three will unduly prejudice his defense against counts one and two.

Different offenses are "connected together in their commission" within the meaning of section 954 if they share "a common element of substantial importance." (*People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752].) ▮ The crimes charged in counts two (assault with intent to commit rape) and three (rape) share the important common element of sexual motivation, which reaches the murder charged in count one because of its connection with the rape. The three crimes also share the common element of time, in that the evidence supports the inference that they were committed within a period of not more than three hours. The time element is important because the frustration of the sexual attack at 5 a.m. inferably provided a motive for the rape committed shortly afterward.

These factors demonstrate that the three offenses are "connected together in their commission" for purposes of section 954. They override the prospect of prejudice, which respondent court can effectively control at the single trial. No abuse of discretion appears in order No. 5.

The alternative writ of prohibition is discharged. The petition is denied.

Caldecott, P. J., and Christian, J., concurred.

On April 19, 1979, the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied May 17, 1979.