[Civ. No. 48473. First Dist., Div. Four. Feb. 29, 1980.]

ALLEN LEROY ENGERT, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

690

COUNSEL

Sheldon Portman, Public Defender, and David M. Mann, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and John B. Moy, Deputy Attorneys General, for Real Party in Interest.

OPINION

**CHRISTIAN, J.**—Allen Leroy Engert seeks a writ restraining respondent superior court from proceeding on the special circumstance (torture) allegation (Pen. Code, § 190.2, subd. (a)(18)) in an information by which petitioner is charged with murder (Pen. Code, § 187). Restraint is also sought against trial of a second count of the information, charging penetration by a foreign object (Pen. Code, § 289).

The victim, Adria Manning, was killed May 16, 1979, near midnight. Postmortem examination revealed several areas of trauma: a band-like mark encircled her neck and showed evidence of an abrasion of the skin; the tissue at the front of the neck was bruised in the area of the larynx and the right horn of the hyoid bone was fractured.

The marks about the neck were consistent with some sort of strap or rope being placed around the neck. The hyoid bone injury is commonly seen in the case of manual strangulation. In the opinion of the medical examiner, death was caused by strangulation. The victim's face was swollen and abraded, and the scalp showed fresh bruising.

The chest had small bruises, and the wrists had purplish lines around them, which were apparently caused by band-like ligatures.

The anus revealed an internal abrasion of the lining of the colonic mucosa extending three inches from the anus upward. Some of this bowel mucosa was discovered on the handle end of a hammer found at

the foot of the bed where the body was found. The bowel injury would, in the examiner's opinion, be consistent with the hammer handle having been inserted into the anus.

In regards to the sequence of the injuries to the neck and anus, there was medical opinion that the anal injury was inflicted just before or at the time of death and at about the same time as the neck injuries which caused the victim's death.

The body was discovered by the victim's boyfriend, Orville Wimberly, when he returned home from work at about 7 a.m.

The special circumstances specified in Penal Code section 190.2, subdivision (a)(18) are shown where "The murder was intentional and involved the infliction of torture. For the purpose of this section torture requires proof of the infliction of extreme physical pain no matter how long its duration." Petitioner contends that if neither intent to inflict pain, an awareness of pain by the victim nor prolonged pain are required for a murder by torture, this special circumstance could be found in any first degree murder where more than one blow was struck. From this contention, petitioner reasons that "logic demands an interpretation which requires proof of awareness of pain," and contends that the record shows no such awareness.

While the specific intent to cause pain is not requisite to the special circumstance of torture murder, it does not follow that no mental element additional to that required in any first degree murder is required. The act could inflict extreme pain and be performed deliberately and with knowledge of and wilful disregard of the likelihood of pain even without a specific intent to inflict the pain. In *People v. Wiley* (1976) 18 Cal.3d 162, 168-169 [133 Cal.Rptr. 135, 554 P.2d 881], the Supreme Court stressed that it is the *means* by which the murder is accomplished that has historically distinguished murder by torture from murders less severely punished. "The history of section 189 and our construction of its language establish that this type of murder was categorized as first degree murder because the Legislature intended that the *means* by which the killing was accomplished be equated to the premeditation and deliberation which render other murders sufficiently reprehensible to constitute first degree murder. A murder by torture

was and is considered among the most reprehensible types of murder because of the calculated nature of the acts causing death, not simply because greater culpability could be attached to murder in which great pain and suffering are caused to the victim."

■ The court further explained why awareness of pain is not an element of the offense of murder by torture. "Attempts to measure the amount of pain, if any, suffered by victims of torturous acts, some of whom like William, may have been rendered insensitive to pain by alcohol or drugs, others of whom mercifully may have been quickly rendered unconscious at the outset of the homicidal assault, not only promises to be futile, but are unnecessary. The Legislature did not make awareness of actual pain an element of torture-murder. Although it has been assumed in the past opinions in torture-murder cases that the victim probably felt pain, it does not follow that awareness of pain is an element of the offense. The murderer who exhibits 'the cold-blooded intent to inflict pain for personal gain or satisfaction' may not assert the victim's condition as a fortuitous defense to his own deplorable acts." (*People* v. *Wiley, supra*, 18 Cal.3d 162 at p. 173.) The same reasoning applies to the special circumstance of torture-murder.

■ The evidentiary test to be applied to review of the evidence supporting a special circumstance allegation after denial of a section 995 motion is "'some rational ground for assuming the possibility'" that the special circumstances alleged are true. (*Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 955 [153 Cal.Rptr. 720].) Here the evidence that the victim was bound and a hammer handle inserted in her anus at about the time of strangulation constitutes rational grounds to believe that the murder involved the torture of the victim.

■ Petitioner also challenges the order holding him to answer, contending that the cross-examination of Orville Wimberly was unduly restricted by the magistrate. Wimberly had lived with the victim "on and off for about ten years" and continuously for the past seven years. Defense counsel on cross-examination asked him if he had ever engaged in anal intercourse with the victim and whether she had ever given him permission to insert foreign objects into her anal area. An objection was sustained and petitioner now argues that these questions should have been permitted as relevant to the issue of consent and whether the victim perceived pain.

Wimberly occupied the role of husband in the victim's life. Their sexual practices were not relevant to any issue before the magistrate. The ruling was not error.

The alternative writ is discharged and the petition is denied.

Rattigan, Acting P. J., and Poché, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied April 24, 1980. Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.