[Civ. No. 49485. First Dist., Div. Three. Apr. 9, 1981.]

HAROLD MILLER ERVIN, JR., Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Edward L. Merrill and Merrill, Thiessen & Gagen for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**WHITE, P. J.**—In this petition we are presented with two issues we previously decided in *Conway* v. *Superior Court* (Nov. 26, 1980,

1 Civ. 49127 unpub. opn.) (hereafter *Conway*). We write on a clean slate because, though we certified our opinion in *Conway* for publication, the California Supreme Court directed the Reporter of Decisions not to publish the opinion in the Official Reports.

Petitioner is the alleged coparticipant in the crimes charged against Mr. Conway. He challenges trial court denial of his motion to dismiss pursuant to Penal Code section 995, asserting that the court erred in not reaching the merits of his challenge to great bodily injury enhancement allegations and asserting that the evidence presented at the preliminary hearing did not support a charge of kidnaping. We issue writ of prohibition restraining the trial court from further proceedings on the enhancements other than to reconsider the motion to dismiss the enhancements and decide it on the merits. We uphold the trial court ruling on the kidnaping charge.

Petitioner is charged with kidnaping, robbery, two counts of rape, and assault with a deadly weapon. The information alleges infliction of great bodily injury during the commission of all counts and being armed with a firearm and using a deadly weapon in commission of all but the last crime. The facts concerning these crimes were presented at a separate preliminary examination from that held for coparticipant Conway.

At petitioner's preliminary examination the victim testified that while hitchhiking in Berkeley she accepted a ride from petitioner and another man. Though her destination was the Richmond-San Rafael bridge, she agreed to a side trip to the coparticipant's home to check on his children. At the home she was forcibly raped by both men. During a struggle she was choked and beaten around the head, face, eyes and ears by petitioner. She was tied up and a towel was stuffed in her mouth. She was cut on the hand with a knife as she fended off the coparticipant. Rings and jewelry were taken from her purse and her person. At one point the coparticipant threatened her with a gun and at another point petitioner threatened her with a knife.

After these events there was a discussion about what to do with the victim. The three discussed the alternatives of waiting for a friend with a truck to take her some place or of possibly killing her. The coparticipant wanted to take her back to Berkeley, but petitioner did not. Ultimately she was returned to Berkeley and let off there, but the testimony does not reveal how the decision was made or under what cir-

cumstances the three entered the car and traveled to Berkeley except for showing that during the ride there was disagreement about whether to actually take her back to Berkeley.

■ Petitioner contends that the evidence at the preliminary examination was insufficient to sustain a charge of kidnaping and that the trial court should have granted his motion to dismiss that count of the information. We disagree.

Penal Code section 207 provides that "[e]very person who *forcibly* steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county," (italics added) is guilty of kidnaping. The section also provides for kidnaping by fraud, but an asportation by fraud alone constitutes a kidnaping only where there is unlawful transportation into the state for any purpose. (Pen. Code, § 207; *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468]; *People* v. *Rhoden* (1972) 6 Cal.3d 519, 526-527 [99 Cal.Rptr. 751, 492 P.2d 1143].)

The information alleges that a kidnaping took place during the transportation from the rape site in San Pablo to Berkeley. The Attorney General supports this charge by arguing that the crimes committed in San Pablo permit a reasonable inference that the victim felt she had no choice other than to accept the ride back to Berkeley. "Had she declined, she conceivably could have been harmed further. She felt threatened. She felt she had no real alternatives. Under these circumstances, although her initial ride was voluntary, her subsequent movement back to Berkeley was forcible."

The trial court's test on a motion to dismiss pursuant to Penal Code section 995 is whether the evidence at the preliminary hearing provides "'some rational ground for assuming the possibility'" that a kidnaping was committed. (*Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 955 [153 Cal.Rptr. 720].) ■ This court, on review, may not substitute its judgment for that of the magistrate as to the weight of the evidence, and every legitimate inference to be drawn from it must be drawn in favor of the information. (*Id.*)

The difficulty in this case is that there was no testimony at the preliminary examination concerning the circumstances of the return trip to Berkeley. It is true the testimony reveals that a discussion of alternatives took place and that it is reasonable to infer that the victim's vote

was not a strong vote in the discussion. But in order to support a kidnaping charge one must draw the further inference that petitioner or his coparticipant forced her to accompany them in the car and refused her the option of calling a cab, walking down the street, or otherwise leaving their company. If they drove her to Berkeley to save her the cost of cab fare or the inconvenience of finding another means of transportation, then certainly no kidnaping occurred.

In spite of this gap in the testimony, we uphold the trial court ruling on the kidnaping. Two reasonable inferences may be drawn concerning the transportation to Berkeley: (1) that petitioner and his coparticipant were still exercising control over the victim and forced her to leave the crime scene with them; or (2) that the men drove her to Berkeley as an accommodation to the victim, chosen by her, over being left to find her own transportation. While we would have preferred the gap be filled by testimony, we cannot say that the first inference is unreasonable.[1] While at the San Pablo residence the men beat, raped, threatened, and robbed the victim. Thereafter they considered killing her. Even while in the car, they debated her fate. It is not unreasonable to conclude that before they arrived in Berkeley they relinquished their control over her only to the extent of giving her a choice of in what place, removed from the crime scene, she wished to be released. That constitutes kidnaping.

Petitioner contends that the injuries sustained by the victim did not constitute great bodily injury within the meaning of Penal Code section 12022.7. He cites *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], and a line of cases following *Caudillo*. He asserts that the trial court did not so rule because it felt bound to apply the holding of *People* v. *Superior Court* (*Grilli*) (1978) 84 Cal. App.3d 506 [148 Cal.Rptr. 740], which exempts enhancement allegations from the reach of a Penal Code section 995 motion to dismiss.

The Attorney General has conceded that the writ should issue and that the trial court should be directed to consider the merits of the motion to dismiss enhancement allegations. However, he makes that concession out of concern for consistency with the result we reached in

---

[1]At oral argument, petitioner's counsel conceded that the evidence was sufficient for an inference that the victim was forced to accompany petitioner somewhere.

the *Conway* case, not because of agreement with the legal analysis used in the *Conway* opinion.

The Attorney General's concession concerning this case relieves us from the *obligation* of restating our views about the validity of *Grilli*. Thus we need not and will not issue a *decision* on the *Grilli* issue. To do so would create unnecessary confusion in the trial courts, which would be forced to decide which decision to follow. However, we believe our criticism of *Grilli* is valid. We believe also that our analysis should be available for consideration, debate, criticism, refinement, and citation to other Court of Appeal panels and to the Supreme Court. Therefore, in the following discussion we reiterate our analysis from *Conway* and augment it with consideration of criticisms made in the petition for hearing in *Conway*, of which we take judicial notice.

In *Grilli*, the defendant was charged with rape (two counts) and oral copulation, and was held to answer on all counts. Thereafter the People filed an information adding, inter alia, Penal Code section 12022.7 enhancement allegations as to all counts. In response to the defendant's section 995 motion, the trial court dismissed all the clauses alleging great bodily injury. The People sought and obtained writ of mandate.

The *Grilli* court's reasoning is reproduced in substantial part: "The People contend that the fact of great bodily injury charged in an accusatory pleading pursuant to section 12022.7 may not be the subject of a motion to dismiss made pursuant to section 995. We agree. Although section 12022.7 has been the subject of but limited judicial interpretation (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 580-589 . . .), it is clear from judicial analysis of analogous enhancement statutes (§§ 12022, 12022.5) that its provisions *do not define a crime or offense* but relate to the *penalty* to be imposed under certain circumstances. (*In re Culbreth* (1976) 17 Cal.3d 330, 333 . . .; *People* v. *Strickland* (1974) 11 Cal.3d 946, 961 . . .; *In re Shull* (1944) 23 Cal.2d 745, 749 . . .; *People* v. *Provencher* (1973) 33 Cal.App.3d 546, 549-550 . . .; *People* v. *Henderson* (1972) 26 Cal.App.3d 232, 237, fn. 4 . . .; *People* v. *Henry* (1970) 14 Cal.App.3d 89, 92 . . .; see also *People* v. *Najera* (1972) 8 Cal.3d 504, 511, fn. 6 . . . .) That the provisions of section 12022.7 merely impose *additional punishment* for the felony or attempted felony committed under certain circumstances is apparent from the provision that the person 'shall *in addition and consecutive* to the punishment prescribed *for the felony or attempted felony of which he has been convicted*, be punished by an *additional term* of three years, unless

infliction of great bodily injury is an element of the offense of which he is convicted.' (Italics added.)

"Defendant in his motion to dismiss, challenged the inclusion in the information of only one offense, the charge of attempted murder. Defendant did not in his motion to dismiss challenge the correctness of the magistrate's order committing him for the offenses of rape and oral copulation or the inclusion in the information of the charge of false imprisonment; with respect to those counts, he challenged only the inclusion of the enhancement of punishment allegations. Numerous cases have held that an examination under section 995, paragraph 2d, subdivision 2, is limited to determining 'if there is some rational ground for assuming the possibility that an *offense* has been committed and the accused is *guilty* of it.' (*Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464 ..., italics added; *People* v. *Hall* [1971] 3 Cal.3d [992] at p. 996; *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 ....) Section 999 also envisions an *offense*, in that it provides that 'An order to set aside an indictment or information, as provided in this chapter, is no bar to a future prosecution for the same offense.' We hold that since section 12022.7 does not define a *separate offense*, but merely imposes *additional punishment* for the felony or attempted felony committed, an allegation made pursuant to section 12022.7 may not be the subject of a challenge on the ground that the defendant had been committed without reasonable or probable cause." (At pp. 512-513.)

Had the *Grilli* court articulated a sound legal or practical basis for its conclusion, we would not hesitate to follow it. However, because we perceive serious flaws in the legal justification for the ruling we feel compelled to examine practical effects not mentioned by the *Grilli* court and to reexamine the legal principles pertinent to the issue.

The *Grilli* rationale is simple: Penal Code section 995 motions challenge only "offenses." An enhancement is not an "offense." Therefore the pretrial motion to dismiss may not reach enhancements. The primary defect to the *Grilli* decision is that its major premise is without sound legal support. Penal Code section 995 reads that "The indictment or information must be set aside" if the defendant has been indicted or committed "without reasonable or probable cause." There is no mention of the word "offense" in section 995.

The *Grilli* court took the word "offense" from general textual statements made in three Supreme Court decisions involving drug charges

with no enhancements. In each, the court was merely stating that an information would not be set aside if there was some rational ground for assuming the possibility that an "offense" was committed. (See *Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464 [93 Cal.Rptr. 587, 482 P.2d 211]; *People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664]; *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) None gave any suggestion of how the Supreme Court would rule on a motion to dismiss an allegation of acts not strictly considered an "offense."

*Grilli* also noted use of the word "offense" in Penal Code section 999, which provides that "An order to set aside an indictment or information, as provided in this chapter, is no bar to a future prosecution for the same offense." However, the mere use of the word "offense" in that section says very little about the function of a section 995 motion. Section 999 is meant only to explain that section 995 dismissals are no bar to further prosecution, not to define what allegations may be challenged in pretrial proceedings.

If concentration upon the word "offense" is removed from the thinking about section 995 motions, logic dictates that the motion should lie in connection with enhancement allegations. The wording of section 995 itself is open to interpretation. It merely states that the indictment or information "must be set aside" upon defense motion if it is found that the defendant has been indicted or committed "without reasonable or probable cause." As early as 1917, in connection with a precursor to section 995 which provided that the "information must be set aside" if the defendant "had not been legally committed by a magistrate" (Stats. 1911, ch. 256, § 1, pp. 435-436), the Court of Appeal concluded that a motion to dismiss for lack of evidence could be directed to only some of the counts charged in the information. (*People* v. *Hudson* (1917) 35 Cal.App. 234 [169 P. 719]; accord, *People* v. *Murray* (1927) 87 Cal. App. 145, 148 [261 P. 740].) Where enhancements are separately charged it would seem to follow that they too, like separate counts, could be challenged separately.

Such a conclusion is implicit in *Ghent* v. *Superior Court, supra*, 90 Cal.App.3d 944. There Division Four of this court distinguished *Grilli*, and approved a pretrial challenge to special circumstance allegations. The *Ghent* court ruled that special circumstance allegations were not mere enhancements of punishment because they might produce "total punishment," noting as a further distinction the fact that special cir-

cumstance allegations affect eligibility for bail, selection of the jury, and various other features of subsequent proceedings. Though the *Ghent* court chose to distinguish *Grilli*, its opinion implicitly erodes the rationale of *Grilli* that a Penal Code section 995 motion may be directed only to "offenses" charged in the indictment or information.

The Penal Code presently contains a number of sections authorizing sentence enhancements. (See, e.g., Pen. Code, §§ 12022, subds. (a) and (b), 12022.3, 12022.5, 12022.6, 12022.7, 12022.8.) Findings concerning the truth of the allegations seeking these enhancements can add years to a defendant's commitment. Thus, these allegations may constitute powerful bargaining tools for the prosecutor. Evidence to support the allegations can often be presented easily during presentation of the prosecution's evidence on the basic offenses. Yet if it is not presented, and indeed if it does not exist, the defendant may remain under the threat of a long sentence during the entire plea negotiation process. At trial the defendant may be asked to defend against allegations, the proof for which was withheld at the preliminary hearing. Even if the prosecution has presented all its evidence at the preliminary hearing, there is a threat that the jury will accept evidence concerning allegations that should have been "weeded out" by the magistrate or superior court judge in pretrial proceedings.

We have difficulty conceiving of countervailing benefits to the *Grilli* position. The most that can be said in *Grilli*'s behalf is that it reduces the number of decisions required of magistrates and of superior court judges assigned to section 995 motions. In an occasional case, *Grilli* might benefit a prosecutor who found it difficult to assemble for the preliminary hearing evidence that a certain dollar amount was taken in an intricate financial crime. (Pen. Code, § 12022.6.) However, even then, a holding order could probably be obtained with evidence giving a preliminary indication of the scope of the loss. Similarly, a holding order on a great bodily injury enhancement, under Penal Code section 12022.7, ordinarily could be obtained without the necessity of expert medical testimony.

In summary, we find no legal or practical basis for the *Grilli* decision and decline to follow it.[2]

---

[2]We wish to make clear that our ruling has no application to allegations of prior felony convictions. The statutes covering prior convictions provide that at any time while an information or indictment is pending priors may be added "upon order of the court".

In his petition for hearing in *Conway*, the Attorney General argued that we had overlooked certain sections of the Penal Code which used the term "offense" in describing the magistrate's function at a preliminary examination (Pen. Code, § 872) and the prosecutor's obligation in filing an information in superior court (Pen. Code, § 739).

It is true that Penal Code section 872 states that the magistrate must hold a defendant to answer if it appears that a public "offense" has been committed. The companion section, Penal Code section 871, provides for discharge if it appears that no public "offense" has been committed or there is not sufficient cause to believe the defendant guilty. It is true also that Penal Code section 739 provides that after commitment by the magistrate the district attorney shall file an information which may charge the defendant with either the "offense or offenses" named in the commitment order or any "offense or offenses" shown by the evidence. However, if the People insist upon a technical reading of "offense" to exclude enhancements, they meet an insurmountable barrier to even charging and proving in superior court an enhancement pursuant to Penal Code section 12022.7.

If section 739 does not authorize the charging of an enhancement under Penal Code section 12022.7, we wonder where the prosecution obtains the authority to charge and prosecute such an enhancement. It is to be noted that Penal Code section 737 states (with exceptions not applicable) that "[a]ll public offenses triable in the superior court must be prosecuted therein by indictment or information, . . ." Penal Code section 950 authorizes an accusatory pleading to make a statement of the public "offense or offenses," and other pleading statutes discuss various rules concerning statement of a public "offense." (See, e.g., Pen. Code §§ 952, 954, 956, 958, 959.) But only Penal Code sections 969, 969c, 969d and 969e provide for the pleading of what could be described as "enhancements." These sections cover only prior felony convictions and certain firearm allegations. Thus, if a Penal Code section 12022.7 enhancement is not considered an "offense" within the meaning of Penal Code section 739, then not only is it not reachable under a Penal Code section 995 motion (accepting the People's theory that "offense" is the magic word for that section), but it is not charge-

---

(Pen. Code, § 969a), and that a prior may be added even after the magistrate has taken a guilty plea pursuant to Penal Code section 859a (Pen. Code, § 969-½). The clear implication of these sections is that the defendant can be tried on a prior without evidence of same having been presented at the preliminary hearing or before the grand jury. No similar statutes permit late charging or enhancements, which under our ruling must be supported by evidence presented at the preliminary hearing.

able in the information or prosecutable in the superior court. Clearly, these Penal Code sections enacted long before the birth of Penal Code section 12022.7 are sufficiently flexible to permit the term "offense" to expand to include "offense and its enhancements."[3]

The Attorney General's most troubling argument on petition for hearing in *Conway* relates to the confusion caused by splitting an enhancement from its underlying offense. If the trial court sustains the underlying count but on Penal Code section 995 motion orders a dismissal of the enhancement, the People foresee difficulties in rejoining the count with the enhancement when the trial court ruling has been found incorrect or is deemed by the prosecution to be incorrect. They assert that the district attorney could not refile the enhancement by itself because it is not an offense and arguably could not even appeal the dismissal. If they could appeal the dismissal, the argument continues, difficulties would be created because speedy trial rights might force trial on the underlying charge to proceed.

In addressing this argument, we must first observe that it hinges upon the assumption that the trial court will erroneously grant a motion to dismiss. Certainly the problem would only be an occasional one since the trial court ruling will in most cases be correct. Even in those other cases, however, the problems are not acute or insoluble.

If Penal Code section 995 motions may be directed to enhancements, it would logically follow that Penal Code section 1238, subdivision (a)(1) would permit the prosecution to appeal from an order setting aside an enhancement. (Cf., *People* v. *Burke* (1956) 47 Cal.2d 45 [301 P.2d 241]; *People* v. *Shirley* (1978) 78 Cal.App.3d 424, 430 [144 Cal.Rptr. 282].) Similarly, we see no bar to refiling the enhancement with the underlying charge in municipal court and either abandoning the original charge or merging the two informations once the later charge reached superior court. If the appeal route were taken, there might be a problem with speedy trial rights concerning the underlying charge and a stay might be needed. However, even if the stay were not issued, the enhancement could presumably be tried later and added to the defendant's record if reinstated after appeal.[4]

---

[3]Preenhancement case law cited by the Attorney General must similarly admit to such expansion to cover enhancements. The Legislature's addition of enhancements to the statutory scheme must cause a rethinking of dicta concerning "offenses."

[4]A portion of this problem may be solved by the Legislature's enactment of Penal Code section 871.5, effective January 1, 1981. That section provides that if the *magis-*

It is true that enhancements, because they are not exactly like offenses, do not fit easily into the prior scheme of criminal procedure. However, we believe that by application of a little lubricant, they may be placed in their appropriate place in the scheme. At least with respect to Penal Code section 995 motions to dismiss, we conclude their appropriate place is alongside the underlying offenses. We disagree with the *Grilli* conclusion because it gives them favored status as untouchable sledgehammers poised over the head of the defendant until the day of verdict. We do not believe that the Legislature's failure to redefine the term "offense" in its various Penal Code sections was intended to signify that enhancements were unreachable under a statute which does not even use the term "offense."

In summary, we have concluded that the trial court's ruling on the kidnaping charge was correct. As for the enhancements, while we criticize *Grilli*, our issuance of the writ is based upon a concession by the Attorney General that the trial court should be asked to reach the merits of the motion to dismiss. Let peremptory writ of prohibition issue restraining the trial court from conducting any further proceedings with respect to the great bodily injury enhancements other than to reconsider the motion to dismiss, decide it on the merits, and proceed in accordance with its decision. In all other respects, the petition is denied.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied May 8, 1981.

---

*trate* discharges the defendant on a portion of the complaint the prosecutor may move the superior court to reinstate the dismissed portion. The superior court hears the motion on a record of the preliminary hearing and if the People litigate to decision they are prohibited from refiling. If the superior court denies the motion to reinstate, the prosecution may appeal to this court. If the motion to reinstate is granted, the defendant may seek review pursuant to sections 995 and 999a. Since a "portion" of the complaint would be interpreted to include an "enhancement," there would be a built-in procedure for review by the prosecution. This review would all take place before the matter reached the information stage so speedy trial rights would not be implicated. Of course, this does not solve the problem in a case where the magistrate does not discharge but the superior court grants a motion to dismiss.