[No. A016580. First Dist., Div. Three. Sept. 17, 1982.]

WILLIAM RUSSELL CLINE, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

James R. Jenner, Public Defender, and Louisa Havstad, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver, Thomas A. Brady and Gloria F. DeHart, Deputy Attorneys General, for Real Party in Interest.

OPINION

**BARRY-DEAL, J.**—This petition challenges a trial court ruling denying petitioner's motion to dismiss charges of kidnaping (Pen. Code, § 207), child stealing (Pen. Code, § 278), and child abuse (Pen. Code, § 273a, subd. (1)). At the time of the alleged acts, the only arguably valid custody order[1] gave petitioner custody of the child who is the alleged victim. Thus, neither the kidnaping nor the child stealing allegation can be sustained. As for the charge of child abuse, we have concluded that the testimony at the preliminary examination was sufficient to support the allegation. We issue writ of prohibition to prevent any further prosecution of the kidnaping and child stealing counts of the information.

At the preliminary examination, Laurie Dianne Cline testified that for three years prior to July of 1980 she and petitioner had lived as husband and wife in Indiana. A son, William Robert Cline, was born on August 10, 1978. In July of 1980, she took her son and came to New-

---

[1]See the Uniform Child Custody Jurisdiction Act, Civil Code sections 5150-5174.

ark, California, to stay at the home of her parents. She arrived on July 14, 1980, and telephoned petitioner's parents to tell them where she and the child were. When she left Indiana, she was not aware of any custody order and had not been served with process or other notice of legal proceedings being instituted regarding custody of her son. However, on July 22, 1980, petitioner obtained an ex parte order from an Indiana court granting him temporary custody of his son.

At 10 a.m. on July 24, 1980, petitioner appeared at the door of Laurie Cline's parents' house, asking to see his son. After a five-minute conversation, Laurie brought the boy to the door and agreed to let petitioner hug his son. What began as a three-way hug ended with the boy's weight being transferred to petitioner and petitioner turning and running with him. Petitioner tucked the child under his arm like a football and ran to an awaiting car being driven by petitioner's brother.

Laurie Cline screamed for petitioner to stop and caught up as petitioner was getting into the car. Petitioner first "tossed the baby in the back seat," where he was "[s]creaming—completely hysterical." Laurie was able to keep petitioner from closing the passenger's door and held onto the car as it departed. After trying to pry Laurie loose, petitioner pulled her inside, where the struggle continued. Laurie grabbed the steering wheel and tried to hit a parked car, and she tried to jam the transmission, but was struck by petitioner's brother. Petitioner placed her in a choke hold, but she broke the hold by grabbing his testicles. The baby continued to scream and cry hysterically.

The car then pulled to a stop, and the men tried to take Laurie from the car. She spotted a police car and attracted its attention. The police arrived quickly and diffused the situation, taking the child into protective custody and driving Laurie home. Laurie testified that after the incident the baby would wake at night, screaming hysterically, apparently having nightmares.

Words cannot express our abhorrence for the methods these two parents have used to express their "devotion" to their child. We wonder whether the well-being of the child has ever entered the mind of either parent. Yet, however much we abhor their actions and wonder at their callousness, we find insufficient evidence to support two of the charges brought against petitioner, the only parent charged. (Petitioner does not challenge the charge of assault upon Laurie Cline.)

■ Under California law, absent court order, both a mother and father are equally entitled to the custody, services, and earnings of an unmarried minor. (Civ. Code, § 197.) Although Penal Code section 278 makes it a crime maliciously to take, entice away, detain, or conceal a child from the person having lawful charge of the child, the California Supreme Court has made clear that in the absence of an order or decree affecting custody, a parent does not commit child stealing by taking exclusive possession of the child. (See *Wilborn* v. *Superior Court* (1959) 51 Cal.2d 828, 830-831 [337 P.2d 65].)

The Attorney General does not contest the foregoing interpretation of California law, but merely argues that a serious gap has been left in the law if petitioner cannot be punished for engaging in "thoroughly reprehensible conduct, endangering both the mother and the child." He suggests that petitioner had legal remedies he could have taken by registering his Indiana order, filing for a writ of habeas corpus, and enlisting the assistance of counsel, the court, the police, and the district attorney.

It is not the proper function of the judiciary to fill gaps left by the Legislature or to create punishments for acts not made criminal by the current legislative scheme. To do so would be doubly inappropriate in this case, where the Legislature deleted from Assembly Bill No. 2549, the measure which became Penal Code sections 278 and 278.5 in 1976, language which perhaps would have made petitioner's conduct illegal.[2] In this case, where the only arguably valid custody order was in petitioner's favor (see Civ. Code, §§ 5152, 5161), he cannot be prosecuted for child stealing.

The Attorney General concedes that the propriety of the kidnaping charge is dependent upon the propriety of the child stealing charge. As stated by *People* v. *Oliver* (1961) 55 Cal.2d 761, 768 [12 Cal.Rptr. 865, 361 P.2d 593]: "Penal Code, section 207, as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal consent thereto,

[2]The deleted portion provided that even in the absence of a court order, if a person with a right to custody detained or concealed a child without good cause and with an intent to deprive the other person of such rights, misdemeanor penalties could be imposed. (See the Leg. Counsel's Dig. of Assem. Bill No. 2549, 4 Stats. 1976 (Reg. Sess.) Summary Dig., pp. 406-407.) Under such a provision, the mother's removal of the child from Indiana without the consent of or notice to the father might also subject her to prosecution for child stealing.

should, . . . be construed as making the one so acting guilty of kidnaping only if the taking and carrying away is done for an illegal purpose or with an illegal intent." So construed, petitioner's coequal right to custody defeats any allegation of kidnaping by providing a legal purpose and intent.

 Petitioner contends that even the evidence in support of the child abuse charge is insufficient to support the information. He characterizes the evidence as showing that Laurie Cline gave the child to petitioner, he placed him in the rear seat of the car "where there is less danger of falling out and fewer sharp objects . . .," and when Laurie tried to crash the car, petitioner tried to restrain her and thus protect the child. He asserts that it is most likely that Laurie's conduct, not his, caused the alleged psychic trauma to the child. We do not agree.

Penal Code section 273a is divided into two subdivisions. Subdivision (1) provides: "(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 3 or 4 years." Subdivision (2) is identical except that it provides for only misdemeanor punishment if the same action or neglect occurs "under circumstances or conditions other than those likely to produce great bodily harm or death, . . ." Petitioner is charged under subdivision (1).

In *People* v. *Peabody* (1975) 46 Cal.App.3d 43, 48-49 [119 Cal.Rptr. 780], the court held that this subdivision "requires proof of criminal negligence which means that the defendant's conduct must amount to a reckless, gross or culpable departure from the ordinary standard of due care; it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. [Citations.]" (Accord, *People* v. *Hernandez* (1980) 111 Cal.App.3d 888, 895 [168 Cal.Rptr. 898].) "[T]here is no requirement that the actual result be great bodily injury. The statute is intended to protect a child from an abusive situation in which the probability of serious injury is great." (*People* v. *Jaramillo* (1979) 98 Cal.App.3d 830, 835 [159 Cal.Rptr. 771].)

■ The trial court's test on a motion to dismiss pursuant to Penal Code section 995 is whether the evidence at the preliminary hearing provides "'some rational ground for assuming the possibility'" that the offense was committed. (*Ghent v. Superior Court* (1979) 90 Cal.App. 3d 944, 955 [153 Cal.Rptr. 720].) ■ The appellate court, on review, may not substitute its judgment as to the weight of the evidence, and every legitimate inference to be drawn from it must be drawn in favor of the information. (*Ibid.*; *Ervin v. Superior Court* (1981) 119 Cal. App.3d 78, 81 [173 Cal.Rptr. 208].)

■ Drawing all reasonable inferences in favor of the information, we find a rational ground for believing that petitioner may have committed the offense of child abuse. His acts of carrying the child like a football, throwing him into the back seat of the car, and encouraging or knowingly permitting the dangerous ride which followed may properly be characterized as causing or permitting the child to be placed in a person- or health-endangering situation. Furthermore, Laurie Cline's testimony that the child was traumatized and suffered nightmares and nocturnal hysterical screaming is some evidence that petitioner caused the child unjustifiable mental suffering within the meaning of the statute.

We are not unmindful of the fact that the entire episode might not have occurred but for Laurie Cline's removing the child from Indiana, nor of the possibility that her conduct during the struggle may have contributed to the child's suffering. However, given the strength of a parent's natural instinct to rescue his or her child from a perceived danger,[3] petitioner may reasonably be held accountable for provoking the mother's foreseeable response to the manner in which he took their child. We therefore conclude that the evidence was sufficient to bring petitioner to trial for the offense in question.

Let a peremptory writ of prohibition issue, restraining the superior court from taking any further proceedings upon the counts of the information charging violation of Penal Code sections 207 and 278, other than to dismiss those two counts. As to the count charging violation of Penal Code section 273a, subdivision (1), the petition is denied.

White, P. J., concurred.

---

[3]See *Shanahan v. Orenstein* (1976) 52 App.Div.2d 164 [383 N.Y.S.2d 327] [mother's natural instinct to rescue child from falling building]; see also *Rodgers v. Reserve Life Insurance Company* (1956) 8 Ill.App.2d 542 [132 N.E.2d 692] [son's natural instinct to protect mother from violent attack by father].

**SCOTT, J.**—I dissent from that portion of the opinion holding that there was sufficient evidence to hold petitioner to answer to the child abuse charge.

Though we are required to draw all reasonable inferences in favor of the information, I cannot find a reasonable ground for assuming petitioner may be guilty of child abuse based upon the testimony presented at the preliminary examination. While the child was certainly placed in a dangerous situation, there is no evidence that petitioner took the child knowing such a dangerous ride would follow. Although, as the majority states, a natural parent has an instinctive desire to rescue his or her child from a perceived danger, no such "perceived danger" existed here. Laurie Cline was simply, in disregard for the child's safety, trying to retrieve by force her child from the custody of the father. While some adverse reaction might have been anticipated from petitioner's attempt to remove his child, an ordinarily prudent person would not expect the extreme reaction from Laurie Cline without knowledge of her propensities for such action. The record contains no evidence that petitioner was aware she might act in such a way. Her conduct was bizarre, to say the least.

I would grant the writ in all particulars.