[No. F008873. Fifth Dist. Apr. 5, 1988.]

PABLO RODRIGUEZ et al., Petitioners, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1454

**COUNSEL**

Garry Lawrence Jones and Loretta J. Wichowski for Petitioners.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Garrick W. Chock and Garrett Beaumont, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**HAMLIN, J.—**

### THE CASE

Petitioners Pablo Rodriguez and Ofelia Rodriguez[1] seek a writ of prohibition and/or mandate (1) restraining respondent Superior Court of Tulare County from taking any further action in the pending criminal case against them (proceeding No. 24724), and (2) commanding respondent superior court to vacate its order denying petitioners' motion to suppress evidence pursuant to Penal Code section 1538.5[2] in the same superior court action and to enter a new order granting petitioners' motion. This court issued an

---

[1] Because both petitioners and the third defendant in the underlying action have the same surname, further references to each individually is usually by his or her first name.

[2] Further statutory references are to the Penal Code unless otherwise indicated.

order to show cause directing respondent superior court to show cause why a peremptory writ should not issue.

Petitioners contend that respondent superior court erred in denying their motion to suppress evidence, alleging (1) the affidavit in support of the search warrant under which the evidence supporting charges against petitioners had been seized failed to establish the necessary probable cause for issuance of the warrant and (2) the magistrate's authorization of nighttime service did not rest upon any showing of good cause. For reasons to be stated, we conclude that suppression of evidence is not required. We will therefore deny the petition for writ of prohibition and/or mandate.

## The Underlying Action

Petitioners, along with Alfredo Rodriguez, were charged with multiple violations of the Health and Safety Code: possession of heroin for purpose of sale in violation of section 11351, possession of cocaine for sale in violation of the same section, and maintaining a place for selling or using drugs in violation of section 11366.

On March 19, 1987, Ofelia filed a motion to suppress evidence challenging the showing of probable cause in support of the warrant. About three weeks later, she also filed a written notice of joinder in a similar motion that had been filed on April 3 by codefendant Alfredo. On April 17, Pablo orally joined in codefendant Alfredo's motion. However, neither Ofelia's counsel nor Pablo's counsel appeared at the May 8 hearing on Alfredo's motion. The court denied Alfredo's motion, which had challenged not only the underlying probable cause for issuance of the warrant but the endorsement for nighttime service and the actual nighttime execution of the warrant. In the minute order for that hearing, the court limited its ruling to Alfredo's motion only, further stating: "Motions by the co-defendants [Ofelia and Alfredo] were ordered off calendar because of absence of counsel."[3]

Discovering their motions to suppress had not been heard by the trial court, and upon the court's denial of their motion for a continuance of the June 29 trial date, counsel for Ofelia, acting for both Ofelia and Pablo, refiled a motion to suppress evidence on June 26. By this motion, petitioners challenged both the sufficiency of the demonstrated probable cause and the showing of good cause for the nighttime endorsement and execution of the warrant. On the day set for commencement of jury trial, the trial court heard the motion to suppress, including testimony from the affiant officer,

---

[3] This court takes judicial notice of the record in case No. F008783, a petition for writ of mandate or prohibition by codefendant Alfredo Rodriguez following the superior court's denial of his section 1538.5 motion.

and denied the motion. On that same day, petitioners sought extraordinary relief from this court. Petitioners' trial was stayed pending resolution of this petition.

The petition and response present the following questions: I. Does the time limitation in section 1510 bar petitioners from seeking pretrial review of the trial court's denial of their motion to suppress evidence?

II. Did petitioner Ofelia have a legitimate expectation of privacy in the premises searched?

III. Does the affidavit offered in support of the warrant demonstrate probable cause to sustain issuance of the warrant? If not, did the officers executing the warrant objectively in good faith rely on the warrant?

IV. Was there a sufficient showing of the need for nighttime service of the search warrant? If not, does the magistrate's erroneous authorization of nighttime service compel exclusion of the evidence?

DISCUSSION

I.

*Section 1510 Time Limitation*

The People contend that petitioners are precluded from seeking pretrial review of the trial court's denial of their motion to suppress evidence since petitioners failed to file their motion within 60 days of their arraignment on February 17, 1987, as required by section 1510. That section provides in pertinent part, "The denial of a motion made pursuant to Section 995 or 1538.5 may be reviewed prior to trial only if the motion was made by the defendant in the trial court not later than . . . 60 days following defendant's arraignment on the information or indictment if a felony, unless within these time limits the defendant was unaware of the issue or had no opportunity to raise the issue."

The People point out that the motion on which the trial court ruled was filed June 26, well beyond 60 days from the date of petitioners' arraignment. Petitioners do not attempt to avoid the bar of section 1510 by claiming lack of knowledge of the issue or lack of opportunity to raise the issue; rather, they contend their motions were timely in that their joint motion of June 26 was merely a renewal of their earlier joinder in Alfredo's motion or, in Ofelia's case, a renewal of her motion filed on March 19.

Petitioners' point is well taken. As the court pointed out in *Smith* v. *Superior Court* (1978) 76 Cal.App.3d 731, 734 [143 Cal.Rptr. 109], "A motion is an application to the court for an order. (Code Civ. Proc., § 1003.) The applicant must, in some way, communicate to the court what order is desired and upon what grounds. [Citations.]" At the time of the defendants' arraignment in *Smith,* one of two defendants indicated, "'For the record, I would like to reserve a 995 and 1538.5.'" The court responded, "'It will be reserved for you,'" and codefendant's counsel stated, "'That will be noticed also on behalf of Mr. Smith.'" (*Ibid.*) The court held this was not enough to tell the court the defendants had actually moved to suppress evidence, what evidence they might seek to suppress, or the grounds on which they intended to seek suppression of the evidence. Finding the petitioners were not entitled to pretrial review, the court in *Smith* dismissed their petition.

However, in *Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 950-952 [153 Cal.Rptr. 720], the court refused to dismiss, for failure to comply with section 1510, a petition seeking pretrial review of the trial court's denial of a section 995 motion. There, the court noted that the defendant was charged with homicide and was entitled to a transcript of the preliminary hearing, presumably within 10 days after the hearing. The court then concluded that the delay in furnishing the defendant's attorney a copy of the transcript triggered the statutory exception excusing compliance with section 1510 when the defendant has not had an opportunity to raise the issue. ▪ *Ghent* points out that, once alleged noncompliance with section 1510 has been raised, a defendant bears the burden of showing that he is within one of the exceptions. Logically, a defendant who seeks to avoid the bar of section 1510 upon a claim of timely filing (rather than an exception) should bear the burden of proving his motion was brought within the time prescribed by statute, and we so hold.

▪ As noted above, Ofelia filed not only a motion to suppress evidence on March 19 but also a written notice of joinder on April 3 in a similar motion filed by codefendant Alfredo. Pablo orally joined in Alfredo's motion on April 17. Although the court directed petitioners to refile their motions, neither did so until June 26 when Ofelia refiled a motion to suppress on behalf of both Pablo and herself. On June 29, the court denied the motion as refiled.

We conclude that petitioners' delay in refiling, resulting in the trial court's failure to rule on petitioners' renewed motion until well after 60 days had expired from the time of their arraignment, does not bar petitioners from pretrial review. Section 1510 does not mandate that a motion to

suppress be adjudicated within the 60-day period; it requires only that such a motion be made within that period. Petitioners complied.

## II.

### Legitimate Expectation of Privacy in the Searched Home

■ In their initial opposition, the People contend that Ofelia claims for the first time in this petition that she resided in the premises searched pursuant to the warrant; that Ofelia's failure to make this claim before the trial court equates to a failure to show that she had a legitimate expectation of privacy in the premises that were searched; and that absent such a claim, Ofelia lacked standing to seek suppression of evidence seized from those premises. In responding, Ofelia reiterates that at the time the search was conducted she lived at 681 North Brundage Street in Farmersville (Brundage Street residence), with a corresponding expectation of privacy in her home.

The simple answer to the People's contention is that in the trial court they never challenged Ofelia's legitimate expectation of privacy in the Brundage Street residence. They cannot now raise this issue.

A review of the points and authorities filed by the district attorney in opposition to petitioners' motion to suppress discloses no reference whatsoever to any claim that either Ofelia or Pablo lacked the requisite legitimate expectation of privacy in the Brundage Street residence. In responding to questions on cross-examination concerning lack of any facts in the affidavit to identify the suspected residents of the house, officer-affiant Farrel Ward, a detective with the Exeter Police Department, stated that the confidential informant "wasn't sure who the people was. He just knew that they lived there and this is where the dope came from."

As the United States Supreme Court pointed out in *Steagald* v. *United States* (1981) 451 U.S. 204, 209 [68 L.Ed.2d 38, 43-44, 101 S.Ct. 1642]: "Aside from arguing that a search warrant was not constitutionally required, the Government was initially entitled to defend against petitioner's charge of an unlawful search by asserting that petitioner lacked a reasonable expectation of privacy in the searched home, or that he consented to the search, or that exigent circumstances justified the entry. The Government, however, may lose its right to raise factual issues of this sort before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation."

Having failed at the suppression hearing to assert that Ofelia lacked a reasonable expectation of privacy in the searched home, the People are now precluded from raising the issue.

## III.

### Probable Cause

The operative language in the affidavit submitted to support issuance of a search warrant for the Brundage Street residence that purports to establish probable cause is as follows: "YOur [sic] affiants were advised by a confidential reliable informant within the past two days, that informant, while working as an informant, was present within the past two days as well [as] on numerous occasions at said residence, as described in detail on page one of the affidavit. When heroin has been sold from said residence, said informant further advised your affiants that said informant has accompanied on numerous occasions, individuals to said residence for the purpose of purchasing heroin and then said informant observed said individuals to enter said residence and then exit said residence in a short period of time, returning directly to said informants's [sic] locaiton [sic] and displaying to said informant a quanity [sic] of heroin that said indiiduals [sic] had stated were purchased from within said residence from a person whose identity is unknown to said informant.

"The reliability of the informant has been further ascertained by affiants in that said informant has on numerous occasions provided narcotic intelligence information to your affiants and other law enforcement officers, which has been corroborated with various sources and that information has been found to be factual."

Following the April 8 hearing, the trial court upheld the search warrant and found the affidavit adequate to support its issuance. In doing so, it noted that the period at the end of the first sentence is obviously misplaced; the qualifying phrase, "[w]hen heroin has been sold from said residence," should be part of the first sentence. This was deemed to have been the construction given the affidavit by the magistrate.

Nevertheless, reading the first sentence as the trial court did in deference to the magistrate's determination of probable cause and "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant" (*Illinois* v. *Gates* (1983) 462 U.S. 213, 236 [76 L.Ed.2d 527, 547, 103 S.Ct. 2317]), the sentence states only this: a confidential reliable informant was present *at* petitioners' residence within two days prior to preparation of the affidavit when heroin was sold from the residence. The remaining

information concerning the confidential informant is simply that he or she was *at* the residence on numerous occasions, for which no date or time-frame is specified, when heroin was sold from the residence. Presumably these are the occasions described in the affidavit when the informant accompanied unidentified individuals to the residence for the purpose of purchasing heroin, observed these individuals enter the residence and exit within a short period of time, immediately displaying to the informant a quantity of heroin which they told the informant had been purchased inside the residence. None of these unnamed individuals could identify or describe the person who purportedly sold them the heroin, nor could the confidential informant supply this fairly critical piece of information.

■ In *People* v. *Frank* (1985) 38 Cal.3d 711, 722 [214 Cal.Rptr. 801, 700 P.2d 415], the California Supreme Court reaffirmed the appropriate standard for reviewing search warrant affidavits as first articulated in *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337]: "This court, like the United States Supreme Court, seeks to encourage the use of warrants in preference to warrantless searches, however justifiable such a search may be as an exception to the warrant requirement. We therefore follow the rule that ' "courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." ' (*People* v. *Mesa* (1975) 14 Cal.3d 466, 469 . . . .)"

Moreover, since the passage of Proposition 8[4] precludes California courts from excluding relevant evidence except insofar as such exclusion is compelled by the federal Constitution (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744]), this court's review of the affidavit submitted to the magistrate must be further tempered by the decision of the United States Supreme Court in *Illinois* v. *Gates, supra,* 462 U.S. 213. There the court rejected what had previously been described as the two-pronged *Aguilar-Spinelli* test[5] for gauging the sufficiency of an affidavit to establish probable cause for issuance of a warrant. In its place the court adopted an approach by which a reviewing court assesses the totality of the

---

[4] Proposition 8 added section 28, subdivision (d) (hereafter section 28(d)), to article I of the California Constitution, which provides in relevant part: "Right to Truth-in-Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, *relevant evidence shall not be excluded* in any criminal proceeding, including pretrial and post conviction motions and hearings, . . ." (Italics added.)

[5] *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].

circumstances under which the warrant issues and invalidates the warrant only if that totality fails to establish probable cause.

■ However, even applying the totality-of-the-circumstances approach to the instant case, we conclude that the affidavit here is not sufficient to establish probable cause that would sustain the magistrate's decision to issue a search warrant. The statement that, within two days prior to preparation of the affidavit, a confidential informant was at petitioners' residence when heroin was sold from the residence is nothing more than "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 239 [76 L.Ed.2d at p. 549].) The statement contained no *facts* that might establish the basis of the confidential informant's knowledge. It does not indicate the informant was in the house; it states only he was *at* the residence. It reflects no facts upon which the informant, and consequently the affiant, could conclude heroin was being sold. No substance was observed or smelled, no bindle or other forms of packaging were noted, no exchange of drugs for money was observed.

Moreover, the confidential informant's presence at the house on "numerous" and obviously prior occasions does nothing to flesh out the deficiencies in this critical first sentence. "[A]n affidavit in support of a search warrant must provide probable cause to believe the material to be seized is still on the premises to be searched when the warrant is sought. [Citations.]" (*People* v. *Mesa, supra,* 14 Cal.3d at p. 470; see also *United States* v. *Angulo-Lopez* (9th Cir. 1986) 791 F.2d 1394, 1399.) Thus, even if we overlook clearly serious procedural deficiencies in permitting a confidential criminal informant to assume the role of an officer in monitoring what appear to be controlled buys from individuals who are unidentified, untested, and apparently unsearched, the absence of any time reference within which these activities occurred provides an insufficient basis to sustain a magistrate's determination that heroin would be found on the premises at the time the warrant issued.

■ Lastly, the affiant-officer attests to the credibility of this confidential informant in the same conclusory fashion he sets forth his statement of probable cause. Again, the affiant vaguely refers to "numerous occasions" on which the informant has "provided narcotic intelligence information to your affiants and other [unidentified] law enforcement officers, which has been corroborated with various sources and that information has been found to be factual." There is nothing to indicate how the information was corroborated nor how it was shown to be factual; no reference is made to previous search warrants issued on the basis of information supplied by the

informant, evidence seized pursuant to those warrants, or arrests and convictions resulting from those seizures.

One of the affiants, Detective Ward, testified at the superior court hearing on petitioners' motion to suppress evidence; Ward explained to the superior court that the occurrence he had attempted to describe in the first sentence of the "probable cause" paragraph was actually a controlled buy in which "I [Ward] watched him [the confidential informant], the set up on him. He went into the house, he made the buy, he came out and gave me the heroin." However, Ward did not testify that he told those facts to the magistrate in support of issuance of the search warrant, although Ward did respond affirmatively when asked if the magistrate had checked his search warrant and asked questions before he signed it.

Upon petitioners' motion the court had admitted into evidence copies of nine other affidavits prepared by Detective Ward and warrants issued in response to those affidavits by the same magistrate who issued the search warrant in this case. The probable cause statement in each of those nine affidavits is identical, word-for-word and grammatical-error-for-grammatical error, with the affidavit in this case. In this connection, the trial court noted: "What troubles me is the strong inference, for instance, since none of these obvious grammatical errors were corrected, there's a strong inference that the Magistrate wasn't reading them all that carefully." The court, nevertheless, declined to "make the leap of faith from that that the Magistrate was simply rubberstamping these search warrrants without really looking at the affidavit."

The court also noted that when *it* questioned an affiant about aspects of an affidavit that made no sense or were unclear, it made the affiant correct the affidavit and initial the corrections. Even though it is not necessary to adopt this practice in every instance, there simply is no basis on which this court can assume that the necessary factual information was elicited when the magistrate questioned the affiant. ■ The affiant's testimony at the hearing on the suppression motion cannot provide probable cause.

■ Nevertheless, our conclusion that the affidavit here does not provide probable cause to sustain the magistrate's decision to issue a search warrant does not necessarily require this court to exclude the evidence seized pursuant to the warrant. ■ In *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], the Supreme Court held that evidence should not be excluded when an officer conducting a search objectively relies in good faith on a warrant, issued by a detached and neutral magistrate, that later is determined to be invalid. That court pointed out that the good faith inquiry "is confined to the objectively ascertainable

question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered." (*Id.* at pp. 922-923, fn. 23 [82 L.Ed.2d at p. 698].)

The Supreme Court reached its holding in *Leon* after balancing the cost of suppressing relevant evidence against the benefit of the exclusionary rule. It went on to conclude: "Because we find that the [exclusionary] rule can have no substantial deterrent effect in the sorts of situations under consideration in this case, . . . we conclude that it cannot pay its way in those situations." (*United States* v. *Leon, supra,* 468 U.S. at p. 908, fn. 6 [82 L.Ed.2d at pp. 688-689].)

At the same time, the Supreme Court in *Leon* made it clear that the officer will in some cases have no reasonable grounds for believing the warrant was properly issued. The court referred specifically to cases in which the magistrate was misled by information in an affidavit which the officer knew or should have known was false, in which the magistrate wholly abandoned his role, in which the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' " or in which the warrant was so facially deficient that the officer cannot reasonably presume it to be valid. (*United States* v. *Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at p. 699].)

█ We find none of the circumstances mentioned in the preceding examples present in this case. There was no false information included in the affidavit supporting the issuance of the warrant for the search of the Brundage Street residence. While we have concluded that *legally* this affidavit was factually insufficient, the affidavit was not so wholly lacking in indicia of probable cause as to render Detective Ward's belief in its existence entirely unreasonable. The magistrate did not abandon his role, and the warrant itself was not facially deficient. Instead, the trial court may appropriately have concluded that Detective Ward objectively relied in good faith on the warrant he obtained in this case because he had previously obtained numerous search warrants from the same magistrate based on substantially the same showing. Admittedly, the trial court expressed some concern that the magistrate was not reading the affidavits all that carefully, an expression of concern clearly justified under the circumstances of this case. But as the Supreme Court observed in *Leon,* "there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion." (*United States* v. *Leon, supra,* 468 U.S. at p. 916 [82 L.Ed.2d at p. 694].)

We conclude that the insufficiency of the affidavit does not compel suppression of the evidence since the officer executing the search warrant for the Brundage Street residence relied in good faith on the warrant under the *Leon* standard.

## IV.

### *Nighttime Service*

The search warrant affidavit Detective Ward signed contains a paragraph that provides in part, "Wherefore your affiant prays that a search warrant be issued for the seizure of said property or any part thereof, at anytime [*sic*] of the DAY OR NIGHT good cause therefore [*sic*] having been shown." Correspondingly, the magistrate issuing the warrant signed the nighttime endorsement on the warrant form that provides, "GOOD CAUSE HAVING BEEN SHOWN BY AFFIDAVIT, THIS WARRANT CAN BE SERVED AT ANY TIME OF THE DAY OR NIGHT." In fact, the warrant was served at 10:45 p.m.

At the time the warrant was issued, section 1533 provided that, "Upon a showing of good cause, the magistrate may, in his discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction, the warrant shall be served only between the hours of 7 a.m. and 10 p.m." The trial court concluded that "[t]he judge's authorizing nighttime service was purely gratuitious [*sic*] and was error on his part, but it is my decision that that does not necessarily trigger the exclusionary rule. The officer in good faith believed that he had authorization to serve him at night." ▓▓▓ The trial court's finding that the officer in good faith believed he had authorization for nighttime service cannot be sustained because the officer must have either known or should have known, since he was the affiant, that *no* facts were set forth in the affidavit to show that nighttime service was necessary.

The good faith exception to the exclusionary rule cannot be applied when the officer's reliance is not objectively reasonable. An officer cannot objectively rely on the validity of a nighttime endorsement when he knows that no facts to show the need for nighttime service have been presented to the magistrate and that the drug operation he expects to expose is an ongoing one as in this case.

As the Supreme Court recently clarified in *People* v. *Kimble* (1988) 44 Cal.3d 480, 494 [244 Cal.Rptr. 148, 749 P.2d 803]: "It is difficult, however, to anticipate all of the numerous factors that may justify the authorization of a nighttime search and we think that the Sixth Circuit—in interpreting

the comparable federal rule on nighttime searches—adopted the proper perspective in suggesting that '[t]he Rule requires only *some factual basis for a prudent conclusion that the greater intrusiveness of a nighttime search is justified by the exigencies of the situation.* The procedural requirements of the Rule ensure that the fact that nighttime search is contemplated by the police is brought to the attention of a magistrate and that he or she consciously decide[s] whether such a particularly abrasive intrusion is called for in a given situation.' (*United States* v. *Searp* (6th Cir. 1978) 586 F.2d 1117, 1121, . . .)" (Fns. omitted.)

Detective Ward testified here that the basis for his "request" (presumably the signing of the form paragraph) was, "Nighttime service is any time you got people dealing in drugs there's always a danger of being shot or hurt, and I don't believe that was in the search warrant, but that was originally a warrant for a nighttime service." Section 1533 was amended by Statutes of 1986, chapter 257, section 1, and now provides that "[w]hen establishing 'good cause' under this section, the magistrate shall consider the safety of the peace officers serving the warrant and the safety of the public as a valid basis for nighttime endorsements." But even under section 1533 as amended, some factual basis touching upon officer or public safety must be particularized to the search the officers plan to conduct and must, of course, be communicated to the magistrate. (*People* v. *Kimble, supra,* 44 Cal.3d at p. 494.)

Certainly drug dealers frequently possess weapons, as do criminals of other types, as well as private citizens seeking to protect their homes from nighttime intruders. Even in a justifiable concern for officer or public safety, those seeking authorization for nighttime service of a search warrant should be required to offer the magistrate some *fact* upon which the magistrate can conclude that the particular search under consideration requires nighttime service. Absent such a showing, a request for a nighttime endorsement should be declined by the magistrate.

 Although we have concluded the officer executing the warrant to search the Brundage Street residence could not reasonably have relied upon the magistrate's authorization of a nighttime search, our conclusion does not necessarily dictate exclusion of the evidence seized in that search. We must first address, of course, this court's opinions in *People* v. *Watson* (1977) 75 Cal.App.3d 592 [142 Cal.Rptr. 245] and *Tuttle* v. *Superior Court* (1981) 120 Cal.App.3d 320 [174 Cal.Rptr. 576] in which we held that suppression of evidence seized in nighttime searches is compelled by the Fourth Amendment to the United States Constitution when good cause for service at night has not been shown as required by section 1533. As we explained in *Tuttle*, "[t]ime of execution [of a search warrant] is a

significant factor in determining whether or not in a constitutional sense a search is 'unreasonable.'" (*Id.* at p. 331.)

▮▮▮ We recognize that this court recently declined the Attorney General's invitation to retreat from the position taken in *Watson* and *Tuttle*. However, in *People* v. *Lopez* (1985) 173 Cal.App.3d 125 [218 Cal.Rptr. 799] we found the challenged search constitutionally valid under our earlier decisions and thus had no occasion to consider the effect of article I, section 28(d), of the California Constitution, added by Proposition 8 and set forth in footnote 4 above, on our earlier decisions. We do so now.

The mandate of section 28(d), i.e., relevant evidence shall not be excluded in any criminal proceeding, was explained in *In re Lance W., supra,* 37 Cal.3d 873, 886-887: "What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." Insofar as we held in *People* v. *Watson, supra,* and in *Tuttle* v. *Superior Court, supra,* that exclusion of evidence seized in violation of the nighttime search requirements of section 1533 was compelled not by the statute itself but by the fundamental purposes of the Fourth Amendment, it could be argued that *Watson* and *Tuttle* remain viable after the passage of Proposition 8. But we cannot end our inquiry so easily. Exclusion of evidence even when obtained in violation of the commands of the Fourth Amendment is not always required under current federal law. (See *United States* v. *Leon, supra,* 468 U.S. 897.)

More importantly, as this court in *Tuttle* v. *Superior Court, supra,* was placing section 1533 upon a Fourth Amendment footing, we nevertheless recognized that federal courts have declined to apply the exclusionary remedy for violations of federal nighttime search procedures. (*Tuttle* v. *Superior Court, supra,* 120 Cal.App.3d at p. 331, fns. 6-8.) Thus in *Gooding* v. *United States* (1974) 416 U.S. 430 [40 L.Ed.2d 250, 94 S.Ct. 1780], the United States Supreme Court upheld the applicability of a federal statute specifically directed to narcotic searches and permitting such searches at any time of day or night over a general District of Columbia statute which imposed certain limitations upon nighttime service of a warrant. In concluding the federal statute governed the challenged search, the Supreme Court did not resort to consideration of Fourth Amendment principles; it treated the issue as solely one of statutory interpretation. Likewise in *United States* v. *Searp, supra,* 586 F.2d 1117 the court distinguished between violations of constitutionally mandated procedures governing searches and seizures and procedures which are solely statutory in origin. Holding rule 41(c), Federal Rules of Criminal Procedure (18 U.S.C.), fell within this

latter category, the court concluded that despite violation of the rule, exclusion of the evidence seized was not required. The court observed that "[w]hile the police failed to comply with the procedural requirements of Rule 41(c), the search was nevertheless 'reasonable,' in the constitutional sense, because it was conducted pursuant to a valid state warrant, and met the requirements of the fourth amendment." (*Id.* at p. 1122.)

While we might justifiably distinguish the results reached in *Gooding* and in *Searp* prior to the passage of Proposition 8, we can no longer do so. If exclusion of evidence seized in searches violative of nighttime service requirements is not compelled under current federal law, evidence seized in violation of section 1533 should not be excluded if the search is otherwise reasonable in a constitutional sense. Nothing in the record before us suggests anything unreasonable in the nighttime search of the Brundage Street residence beyond the statutory violation in executing the warrant at approximately 10:30 p.m., and we therefore conclude the evidence seized in that search need not be excluded.

The petition for a writ of mandate or prohibition is denied and the order staying further proceedings is vacated.

Woolpert, Acting P. J., and Brown, (G. A.), J.,* concurred.

A petition for a rehearing was denied May 3, 1988.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.