Filed 4/22/15  P. v. Rackley CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>KOSHAWN MONTRELL RACKLEY,<br><br>      Defendant and Appellant. | A137623<br><br>(Solano County<br>Super. Ct. No. VCR213747) |

Koshawn Montrell Rackley appeals from a judgment of conviction and sentence imposed after a jury found him guilty of robberies and possession of a firearm by a felon. Rackley contends (1) police conducted an unlawful search of his cell phone, because the search warrant they obtained was not supported by probable cause; and (2) this court should examine the sealed transcript of an in camera hearing and the materials the trial court reviewed in connection with his motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), to determine if the court erred.  We will affirm the judgment.

## I.  FACTS AND PROCEDURAL HISTORY

In March 2012, Rackley was charged with seven counts of second degree robbery (Pen. Code, § 211) and possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)).[1]  As to the robbery counts, it was alleged that Rackley personally used a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)).  Rackley's codefendant,

---

[1]      All statutory references hereafter are to the Penal Code.

1

Alfred Foy, Jr. (Foy), was also charged with seven counts of second degree robbery and possession of a firearm by a felon, along with similar enhancement allegations.

A.  Rackley's *Pitchess* Motion and Motion to Quash Search Warrant

As discussed in greater detail *post*, Rackley filed two pretrial motions that are at the heart of this appeal.

In May 2012, Rackley filed a *Pitchess* motion to obtain discovery from the personnel files of two police officers, including the officer who arrested him and signed an affidavit seeking a warrant to search his cell phone and obtain related records.  After an in camera review of material produced by the police department's custodian of records, the court granted Rackley's motion in part.

In June 2012, Rackley filed a motion to traverse and quash the search warrant that had resulted in the seizure of information from Rackley's cell phone and cell phone records.  The court denied this motion in July 2012.

The matter proceeded to a jury trial against Rackley and Foy.

B.  Jury Trial

Although the issues in this appeal do not turn directly on the evidence at the trial, we must summarize the evidence for context.

1.  The Robberies

On November 18, 2011, Kenneth Henderson, Jr. (Henderson) was the assistant manager at a Jack in the Box restaurant in Vallejo, working the front counter.  At 8:00 p.m., two African-American men, each carrying a black handgun, entered the restaurant.

The taller of the two men wore a black hoodie (with a tag extending below the hood on the back), black gloves, and a red bandanna over his nose and mouth.  He jumped over the counter, grabbed Henderson by the collar, and put a gun to Henderson's neck.  The shorter man also wore a dark hooded sweatshirt, black gloves, and a red bandanna over his mouth.  He walked into the dining area and ordered the

2

customers to "[g]et down." The taller man yelled, "This is a robbery. Yeah. You being robbed."

With his gun at Henderson's neck, the taller robber directed restaurant employees to the freezer in the back of the restaurant and demanded their cell phones. He then ordered Henderson to open the cash registers. At the taller robber's direction, the shorter robber also put a gun to Henderson's neck. Henderson opened a register at the front counter and a register at the drive-through window; the taller robber grabbed the money, taking $372.

The taller robber asked Henderson where the safe was. Henderson replied it was in the office, but he did not have the office key. The taller robber pushed Henderson into the freezer.

Meanwhile, the shorter robber put a handgun to the left temple of customer Helen Buenviaje; he demanded, "Give me your cell phone," and then took it. He ordered her husband to hand over his wallet and cell phone and instructed both of them to get down on the floor.

In addition, as Shengkai Wang ate with friends (Zhou, Song, and Xu), one of the robbers walked toward them, pointed a gun at Song, put the gun to Wang's head, and demanded their cell phones. He took Xu's handbag containing her cell phone and pink iPad, as well as Song's handbag containing her cell phone, passport, iPad, and wallet.

Less than five minutes after the employees were pushed into the freezer, Henderson ventured outside the freezer and saw through the restaurant windows a green Mitsubishi Mirage speeding out of the parking lot.

### 2. Police Arrival and Investigation

Vallejo Police Officers Greenberg, Joseph, Yates and others arrived at the restaurant and contacted the employees and customers. Henderson provided a description of the Mitsubishi.

3

### a. Surveillance Video

Officers reviewed a video from the restaurant's surveillance system (which was played for the jury at trial). The video showed the two robbers wearing black hooded sweatshirts; one of them wore black shoes bearing a lighter-colored object (consistent with an emblem on the shoes Rackley wore when he was later arrested) and the other wore white shoes (like those worn by Foy when he was arrested). The video also showed the taller robber jumping over the front counter and putting employees in the freezer; Henderson opening the register at the drive-through window; the taller robber grabbing money out of the register and putting Henderson in the freezer; Henderson walking out of the freezer a couple of minutes later; and the shorter robber with the customers.

### b. Tracking of Victim's Cell Phone

At Officer Joseph's suggestion, victim Wang opened an application called "Find My iPhone" on his cell phone, and then handed his phone to victim Song to track her stolen cell phone. The phone displayed a map indicating that Song's stolen iPhone was located at 603 Grant Street, the corner house on the southwest corner of Lemon and Grant Streets. Officer Greenberg radioed other officers to report to that location.

### c. Pursuit and Arrest of Rackley and Foy

Vallejo Police Officers Jaksch and Kerr and Fairfield Police Officer Mroz immediately responded to Lemon and Grant. Kerr used his spotlight to illuminate a green, four-door Mitsubishi Mirage parked on the street, matching the vehicle description provided by Henderson. Dispatch advised that the car was reported stolen. The hood of the car was still hot and was making popping noises; it had recently rained, and the ground underneath the car was wet.

Officers Jaksch and Mroz turned their attention to the southwest corner of Lemon and Grant, as one or two people pointed to the house and said, "They went that way." Hearing noises in the backyard of 603 Grant, Jaksch shined his flashlight

4

and saw movement by at least one person. He also heard the sound of another person climbing over a fence and running through bushes. Jaksch shined a spotlight into the side yard and announced, "This is the police. Anyone in the rear yard, come out now with your hands up." After officers repeated the announcement for five minutes, Rackley was seen putting something on the ground as he walked out the back gate and onto the street.

Officer Jaksch apprehended Rackley. Officer Mroz and Vallejo Police Officer Park found an iPad in the backyard where Rackley had placed something; they also found a pink iPad on a box in the garage.

Vallejo Police Officer Bauer then saw Foy walking through the backyard of 603 Grant. When Bauer illuminated Foy with a flashlight and announced he was a police officer, Foy ran. Helicopters and other units tracked Foy to a backyard on the 600 block of Sonoma Boulevard. Foy refused officers' commands to get down on the ground and show his hands, and instead threw punches at the officers. A canine officer apprehended Foy, and other officers handcuffed him. Officer Greenberg searched Foy's clothing and found money and a computer memory stick.

### d. Search of Rackley and His Car

In Rackley's left front pants pocket, Officer Jaksch found an iPhone, $443.32 in cash, and a set of house and car keys; in Rackley's right front pants pocket, Jacksch found a Huawei cell phone and $263.25 in cash. Rackley claimed the Huawei cell phone was his, but he had just found the iPhone on the ground.

Officer Jaksch noticed a Chevy logo on Rackley's car keys and asked where he parked his car. Rackley denied he had a car and claimed he took BART, but Jaksch knew that BART did not run to Vallejo. Jaksch looked around at the cars nearby and found a Chevy Cobalt—to which Rackley's car keys fit—in front of 609 Grant Street, across the street from the Mitsubishi Mirage. Through the window of the Chevy, Jaksch saw, in plain view on the right front passenger seat, a Samsung cell phone from which the battery and back cover had been removed. Knowing that batteries are

sometimes removed from cell phones to prevent tracking, Jaksch unlocked and opened the Chevy door; on the backseat, Jaksch found a container holding a wallet with Rackley's identification and credit cards, and a nine-millimeter bullet. Inside the Chevy's trunk, Jaksch found a black hooded sweatshirt turned inside out (with a white tag near the hood), black gloves, a red bandanna, black shoes with white soles, and a black Smith & Wesson semiautomatic nine-millimeter handgun like the one observed in the restaurant's surveillance video, with 15 rounds in the magazine and one round in the chamber. Jaksch later verified that the dismantled Samsung cell phone belonged to Foy.

### e. Victims' Identification of Stolen Property

Henderson, Song, and Xu were unable to identify Rackley or Foy that evening. However, Henderson identified the green Mitsubishi Mirage as the car that fled from the restaurant parking lot after the robberies. He also said a gun that police showed him was one he saw during the robbery. In addition, Xu identified the computer flash drive that Officer Greenberg had found in Foy's pants as hers. She also identified a recovered iPhone and iPad as hers, and Song identified another iPad.

### f. Rackley's Cell Phone

At the police station after the robberies, Officer Greenberg turned on Rackley's cell phone. It contained pictures of a firearm, which appeared to be the same make, model, and color as the gun shown on the restaurant surveillance video and found in the trunk of Rackley's car. It also contained a picture of the same firearm and a red bandanna, and of Rackley and a red bandanna.[2]

---

[2] Rackley's appeal does not challenge Officer Greenberg's observation of the photographs on Rackley's phone, which occurred before the issuance of a search warrant, or the admissibility of Greenberg's testimony. Some of the information Greenberg reportedly observed on Rackley's phone was used by Officer Jaksch to get the warrant to search Rackley's cell phone and obtain records related to the phone. As a result of the issuance of the warrant (which *is* challenged in this appeal) and the search and seizure pursuant to the warrant, the prosecutor introduced evidence of Rackley's cell phone use and location through

### 3. Testimony Concerning Rackley's Cell Phone Use and Location

The custodian of records for Rackley's cell phone carrier testified that records pertaining to Rackley's cell phone showed that, on the day of the robberies, Rackley texted someone that he was looking for a "hit for some loot," and then texted that he had talked to "Al," who was going to get back to him. Eight phone calls between Rackley and (Al) Foy followed. In addition, records indicated that Rackley's cell phone was in the vicinity of the restaurant shortly before the robbery, and both Rackley's cell phone and Foy's cell phone were turned off during the robbery.

### C. Verdict and Sentence

The jury found Rackley guilty on all counts and found true the allegations that he personally used a firearm. The jury deadlocked on the charges against codefendant Foy.

In response to a defense motion, the court struck the firearm enhancement (§ 12022.53, subd. (b)) as to counts 1, 2, and 6 against Rackley. Rackley was sentenced to state prison for 21 years 8 months.

This appeal followed.

## II. DISCUSSION

As mentioned, Rackley (1) contends the search warrant was not supported by probable cause and (2) seeks our review of the court's ruling on his *Pitchess* motion.

### A. Search Warrant

Rackley argues that evidence discovered during the search of his cell phone and cell phone toll records should have been suppressed because the search warrant was based on an affidavit that contained factual misstatements.

### 1. Background Facts

We begin with a closer look at the record.

---

the phone carrier's custodian of records, as set forth *post* in the text. The prosecutor noted this evidence in arguing to the jury that Rackley was guilty.

*a. Search Warrant Affidavit*

On December 20, 2011, Officer Jaksch sought the issuance of a search warrant for Rackley's cell phone and related toll records—including stored photographic images, text messages, and call location information—based on his affidavit containing a statement of probable cause.

The statement began with Officer Jaksch's background: "Your affiant is JARED JAKSCH, a police officer employed by the City of Vallejo Police Department, and has been so employed since January of 2009. From June 2005 to January 2009, I was a peace officer with the Solano County Sheriff's Office. I am currently assigned to the Detective Division and assigned to the Crime Suppression Unit. During my career as a police officer, I have authored 12 search warrants. [¶] I am currently conducting a follow up investigation regarding a robbery."

Officer Jacksch then described the robbery, Rackley's apprehension, and the seizure of Rackley's cell phone: "On 11/18/11 a robbery was committed at Jack in the Box restaurant located at 35 Admiral Callaghan L[ane], Vallejo, CA. There were two black male adults who entered the store with red bandannas on their faces. The robbers both had guns, stole cell phones from patrons and cash from the registers. The robbers then ordered everyone into the back freezer and fled in a Mitsubishi Mirage 4[-door] car. [¶] Upon [Vallejo Police Department's] arrival, one of the customers was able to utilize a GPS in her cell phone to locate the phone at 603 Grant St[reet], Vallejo, CA. I arrived at that location and eventually took Koshawn Rackley into custody as he exited the rear yard of this residence. Rackley had the robbery victim's cell phone in his pants pocket along with a large amount of US Currency. I subsequently searched Rackley's vehicle and located a loaded 9mm handgun, Rackley's wallet and CA ID card, a red bandan[n]a, and black hooded sweatshirt. Rackley also possessed a black Huawei METRO PCS cell phone in his pants pocket. Rackley admitted ownership of the phone and provided me with the cell phone number of 415-724-6888. [¶] Rackley's accomplice was arrested after a

8

lengthy foot pursuit from 603 Grant St[reet], Vallejo, CA, and he was found to be in possession of US Currency and other property belonging to a victim of the robbery."

Next, Officer Jacksch set forth other facts to further indicate reasons for the search of Rackley's cell phone (in italics are the facts Rackley now asserts to be false): "*Officer R. Greenberg #618 later informed me that in Rackley's cell phone there were text messages regarding looking at different stores and about being on the news and getting away with something.* Rackley's cell phone also contained a photograph of a handgun. Rackley is a convicted felon and *on felony probation* out of San Francisco County, CA. [¶] Based on my training and experience, I know that criminals often times utilize cellular phones to plan and carry out their crimes. It is also my belief that criminals commonly communicate with their co-conspirators via text message and cellular telephone calls. Criminals also take photographs of different illicit narcotics, guns, or the fruits of their crimes to share with friend[s]. It is my belief that the text message records, photographs/videos on the phone, call logs, phone book, and other information stored on the suspect[']s cell phone will assist in proving that a specific felony was committed by Koshawn Rackley, namely robbery and conspiracy to commit robbery. The toll records will indicate where Rackley's cell phone was located during the time of the robbery."

*b. Rackley's Motion to Traverse and Quash*

In June 2012, Rackley filed a motion to traverse and quash the search warrant. He argued, among other things, that the affidavit contained two misstatements of material fact: (1) "Officer R. Greenberg #618 later informed me that in Rackley's cell phone there were text messages regarding looking at different stores and about being on the news and getting away with something" and (2) "Rackley is . . . on felony probation out of San Francisco County, CA."

Rackley asserted that, contrary to the affidavit, there were no text messages on his cell phone about "looking at different stores," "being in the news," or "getting away with something." To support this assertion, he attached to his motion a copy of text

9

messages purportedly made from or received on his cell phone from October 1, 2011, to November 19, 2011.  In addition, Rackley asserted that he would present evidence at the hearing to show he was not on probation as of the date of the affidavit.

Rackley argued that the two misstatements contained in the search warrant affidavit constituted "intentional or reckless misstatements of fact" and, without the statements, the affidavit failed to establish probable cause for the warrant.  He further argued that since the warrant was based on intentional or reckless misstatements of fact, the good faith exception to the exclusionary rule did not apply.

*c.  Hearing on Rackley's Motion to Traverse and Quash*

As to the affidavit's statement that Rackley was on felony probation, defense counsel asserted that on December 20, 2011—the date of the affidavit and the court's issuance of the warrant—Rackley was not on probation according to a fax obtained from the San Francisco probation department.  The fax indicated Rackley's probation was terminated on December 10, 2011 (after the robberies were committed but before the signing of the search warrant), and the parties agreed that the court would read to the jury the following stipulation:  "Probation termination date of December 10th, 2011, is attached to this fax. As of that termination date, Mr. Rackley was no longer at [*sic*] any grant of probation out of this county according to the department record check."

The prosecutor argued, however, that Rackley failed to show that this untrue statement was made intentionally or with a reckless disregard for the truth.  Officer Jaksch had testified at a prior section 1538.5 hearing that, when he apprehended Rackley on November 18, 2011, Rackley *said* he was on probation out of San Francisco County.  Jaksch's statement in December 2011 that Rackley was on probation was therefore "a simple error" that did not "rise to the level of a knowing and intentional falsehood."

The prosecutor also argued that the affidavit's statement concerning the contents of text messages on Rackley's cell phone was not made with intentional falsehood or

reckless disregard for the truth. One of Rackley's actual text messages read, "[T]ryna see whassup if you knew a hit for some loot," which Officer Greenberg (and Jacksch) could have reasonably construed to mean that Rackley was "looking at different stores" to rob.

The prosecutor added two other arguments. First, without the two challenged statements, the affidavit still established probable cause to issue the warrant to search Rackley's cell phone and toll records. Second, even if the affidavit did not establish probable cause, the evidence seized from Rackley's cell phone records should be upheld under the good faith exception to the exclusionary rule.

### d. Court's Ruling

After observing that the text message about the "loot" could be construed as a reference to "looking at different stores," the court concluded that, even if it struck the purportedly false statements from the affidavit, the remainder of the affidavit's allegations established probable cause for the issuance of the warrant.

The trial court explained its ruling: "Here, you do have the fact that there was, in fact, an accomplice, second person involved in the robbery, which, again, I think is reasonable to—with the officer's training and experience, to believe that these persons would have been in communication with one another before or after the robbery. [¶] Further, there is evidence contained in the warrant that there is a photograph of a handgun, which is—apparently is accurate. That was not disputed. I think, based on that, the officer could also reasonably believe that there would be further evidence related to the robbery, this armed robbery, on the cell phone, through either text messages or further photographs. [¶] As to the cell site location, that's also a separate inquiry. I think that based on—that the suspect had the phone on his person at the time of his arrest, shortly after this robbery, I think the cell site location would be justified independently, as well. So I'm going to deny the motion to Traverse and/or Quash. I think it's supported—the warrant[']s supported even if that language is stricken, as I've

11

indicated. [¶] Also, there was this reference on page 48 [of the cell phone records]. But from my analysis, I've done my analysis striking all of that language from Officer Greenberg that was relayed to Officer Jaksch, as I've discussed. Let me just say, that was specifically with regards to looking at the different stores, being on the news, and getting away with something. The photograph language is in, convicted felon is in, although felony probation is out. [¶] Okay. So that motion will be denied."

### 2. Law

A defendant may challenge the veracity of an affidavit that supported the issuance of a search warrant, even if the face of the affidavit establishes probable cause. (*Franks v. Delaware* (1978) 438 U.S. 154, 171-172 (*Franks*).) For evidence obtained pursuant to the warrant to be excluded, however, the defendant must show that (1) the affidavit included a false statement made knowingly and intentionally or with reckless disregard for the truth, *and* (2) without this false material, the affidavit's remaining content is insufficient to establish probable cause. (See *id*. at p. 171; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 988-989.)

In our review of the trial court's ruling, we defer to the court's express and implied factual findings if supported by substantial evidence, and independently determine the legality of the search under the Fourth Amendment. (*People v. Eubanks* (2011) 53 Cal.4th 110, 133.)

### 3. Analysis

#### a. The Warrant Was Issued Upon Probable Cause

Assuming, as the trial court did, that the two challenged statements in the affidavit were incorrect and should be excised from the affidavit, the remaining allegations were sufficient to establish probable cause for the issuance of the warrant.

First, the affidavit linked Rackley to the robberies. The GPS on a robbery victim's cell phone tracked another victim's cell phone to 603 Grant Street, where police caught Rackley coming out of the backyard with a robbery victim's cell phone

12

and a large amount of cash (cash had been stolen from the restaurant's cash registers). The robberies had been perpetrated by two black males, and the police chased and apprehended a second black male, in addition to Rackley, who tried to flee from the same Grant Street residence and was also carrying property stolen from one of the robbery victims. In addition, the robbery suspects were armed with guns and wore red bandannas for masks; Rackley's car contained a loaded nine-millimeter handgun and a red bandanna.

Second, the affidavit set forth facts from which a magistrate could reasonably conclude that Rackley's cell phone would contain information pertaining to the crime. The affidavit described Officer Jaksch's experience, and his knowledge that criminals often use cell phones to plan and carry out their crimes, to communicate with their coconspirators, and to take photos of contraband to send to friends. Additionally, Jaksch explained, cell phone call records can be used to pinpoint the location of the cell phone around the time of the robbery and to reveal contacts between coconspirators before and after the robbery.

Indeed, the allegedly misstated information was of little importance given the rest of the allegations in the affidavit; whether or not Rackley was on probation at the time of the affidavit, and whether his cell phone contained text messages that he was going to be on the news or get away with something, there was an ample basis for the magistrate to believe that evidence of the robberies would be found in Rackley's cell phone and toll records, and that probable cause supported the issuance of a warrant.

### b. The Good Faith Exception Applied Anyway

Even if the affidavit had not established probable cause, the evidence seized from Rackley's cell phone pursuant to the search warrant need not have been excluded, because the officers relied on the warrant in good faith. (See *United States v. Leon* (1984) 468 U.S. 897, 922 (*Leon*); *Rodriguez v. Superior Court* (1988) 199 Cal.App.3d 1453, 1463.)

A search conducted pursuant to a warrant is presumably conducted in good faith.  (*Leon, supra*, 468 U.S. at p. 922.)  Nevertheless, the officer's reliance on the magistrate's probable cause determination must be objectively reasonable—in other words, there can be no finding of good faith if a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization.  (*Id*. at pp. 922-923 & fn. 23.)

Rackley asserts that the good faith exception does not apply because Officer Jaksch's statements in the affidavit set forth "information the affiant knew or should have known was false."  (See *Leon, supra*, 468 U.S. at p. 923.)

The record, however, supports the conclusion that a reasonably well-trained officer in Officer Jaksch's position would not have known his affidavit failed to establish probable cause.  In the first place, Rackley finds no fault with the vast bulk of the information Jaksch provided in the affidavit, including the depiction of the evidence squarely linking Rackley to the robbery and the fact that criminals often leave evidence of their crimes on their cell phones.  Furthermore, there was substantial evidence that Jaksch's two purported misstatements were made innocently, without knowledge of falsity.  Jaksch had previously testified under oath that, when he apprehended Rackley on November 18, 2011, Rackley *said* he was on probation out of San Francisco County.  Jaksch's statement in the affidavit that Rackley was on probation was therefore essentially an assumption that Rackley was *still* on probation only about a month later.  Although this assumption turned out to be incorrect—by just a few days—it is reasonable to conclude that Jaksch's statement was not an intentional falsehood.  As to the affidavit's statement concerning the contents of Rackley's cell phone, substantial evidence supported the court's finding that Rackley's message—trying to see "whassup" regarding a "hit for some loot"—could reasonably be interpreted to mean that Rackley

14

was looking for a place to rob, and none of Jaksch's misstatements reflected intentional or reckless falsity.[3]

Rackley fails to establish error.

B.  *Pitchess*

As mentioned, the trial court granted Rackley's *Pitchess* motion in part. Rackley nonetheless asks us to review the transcript of the in camera hearing and the officers' personnel files to determine if the court erred in deciding what information to disclose.  Respondent agrees, citing *People v. Mooc* (2000) 26 Cal.4th 1216 (*Mooc*).)

1.  Law

*Mooc* sets forth a procedure to be followed when the trial court grants a *Pitchess* motion.  The custodian of personnel records is obligated to bring "all 'potentially relevant' " materials to the court and state what other documents in the personnel file were not brought and why.  (*Mooc, supra*, 26 Cal.4th at pp. 1228-1229.)  The court reviews the materials in camera in the presence of a court reporter and determines what must be produced.  (*Ibid.*)  The court must make a record of the materials it reviewed to allow for meaningful appellate review, by photocopying the documents, preparing a list of documents it considered, or stating for the record what documents it examined.  (*Id.* at p. 1229.)  If the court fails to prepare an adequate record, the matter is remanded to the trial court with directions to hold a hearing to augment the record with the evidence the trial court considered in chambers when it ruled on the *Pitchess* motion.  (*Id.* at p. 1231.)

---

[3]  Rackley's reliance on *People v. Maestas* (1988) 204 Cal.App.3d 1208 is misplaced.  There, the matter was remanded for a determination of the officer's good faith belief in the existence of probable cause for issuance of the warrant, because the officer's affidavit omitted facts and contained statements inconsistent with a taped conversation and police report, and was based on the unverified story of an untested informant, which the officer had to independently substantiate.  (*Id.* at pp. 1218-1220.) Here, Officer Jaksch's affidavit did not contradict statements or police reports, and it was based not on an unreliable informant, but on the reports of the robbery victims, his own percipient observations, and the observations of other officers personally engaged in the robbery investigation and the apprehension of the suspects.

A trial court's *Pitchess* ruling is reviewed for abuse of discretion. (*Mooc, supra*, 26 Cal.4th at p. 1228 [reviewing court may "itself review those documents (or augment[] the record to include those documents) and determine[] whether the trial court had abused its discretion in refusing to disclose any of [the officer's] records"].)

### 2. Background

Here, Rackley had filed a *Pitchess* motion for discovery of the names and addresses of all persons who made complaints about Officer Jaksch or Officer Kerr for making false reports, false statements, or fabricating charges (and, as to Jaksch, illegal search and seizure or false arrest), as well as reports and other documents pertaining to such complaints.

At a hearing on June 1, 2012, the trial court found a sufficient basis to "grant the in camera [hearing] as to Officers Jaksch and Kerr on the areas of any false reporting, false testimony, fabrication of charges, false arrests." That same day, the court held an in camera hearing, which was reported, transcribed under separate cover, and filed under seal. After in camera review of materials provided by the custodian of records, the court "ordered disclosure as to one incident as to Officer Jaksch," signed a protective order, and ordered "disclosure . . . as to the names, addresses, contact information of the witnesses and complainants of this incident." The court concluded there were no records to be discovered related to Officer Kerr.

Rackley now requests this court to "conduct an independent *in camera* examination of the sealed reporter's transcript which is currently in its possession and the records proffered by the custodian of records and determine whether the trial court abused its discretion in failing to turn over additional records to the defense." Rackley further requests this court to "review the sealed materials to determine what documents were produced or not produced for the trial court's review and the sufficiency of any explanation of such production."

The appellate record did not include the documents that the trial court had considered in chambers when it made its rulings, or a list of those documents. We

16

issued an order requiring the trial court to hold a hearing to augment the record as to the documents it considered in camera, in accord with *Mooc*. The trial court promptly held a hearing and a supplemental hearing, and provided to this court a response and documents under seal.

### 3. Analysis

The reporters' transcript of the in camera hearing and the material provided to this court by the trial court is sufficient for meaningful review of the ruling on Rackley's motion. Having reviewed this record, we conclude the trial court did not commit reversible error in determining the adequacy of the material presented for its review and what information should be disclosed to the defense.

## III. DISPOSITION

The judgment is affirmed.

                                                _____

                                                NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.